## The Farmers' Mutual Fire Insurance Company of Schuylkill County *versus* Moyer.

| 97 | 441 |
| 102 | 572 |
| 97 | 441 |
| 148 | 357 |

1. Where a building is insured under a valued policy of insurance, by the terms of which the insurers undertake to pay the amount of the policy within three months after notice of loss, and a total loss of the building occurs, preliminary notice whereby the company is informed of such loss is sufficient without giving the more formal proofs.

2. Where in such case the contents of a barn were insured by the same policy as the barn itself, and the directors of the company insuring upon receiving preliminary notice of the loss of such contents, proceeded to pass a resolution denying the liability of the company on other grounds than the want of notice: *Held,* that the question was properly submitted to the jury whether by this action the directors had not waived the necessity of presenting formal proofs of loss.

3. The by-laws of an insurance company prohibited the insuring of any building " situated within fifty yards of a railroad on which steam-power is employed, or of any forges, foundries, furnaces, rolling-mills, powder-mills, paper and oil-mills, cotton-mills, or in general, any mills, factories or machineries driven by steam-power," and provided that if the owner of any insured building "should convert it to some other purpose, or should carry on therein any of the trades" therein before set forth, the policy on his premises should be deemed of no force or effect. *Held,* that the use of a portable steam-engine near a barn, for the purpose of threshing grain within the structure, was no such violation of the by-laws of the company as would vitiate a policy of insurance upon the barn aforesaid.

4. In an action brought upon such policy for a loss occasioned by the burning of the barn in consequence of the explosion of the steam-engine, the court left it to the jury, to say whether the insured had materially increased the risk of fire by using the engine, instructing them that if they were of opinion that he had, they should find for the company defendant. *Held,* that this instruction was as favorable as the defendant could ask.

March 17th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Schuylkill county:* Of January Term 1881, No. 164.

This was an action of covenant, brought February 26th 1876, by George K. Moyer against the Farmers' Mutual Fire Insurance Company of Schuylkill county, upon a policy of insurance insuring, inter alia, a frame barn for $1500, and the contents for $1000, issued April 5th 1869, for the term of ten years. Pleas: *non est factum,* covenants performed, covenants performed *absque hoc,* with leave to give special matter in evidence.

Upon the trial, before PERSHING, P. J., there was no serious dispute as to the material facts, which were as follows :—

[Farmers' Mut. Fire Ins. Co. *v.* Moyer.]

The company defendant was incorporated by a special act of the legislature in 1850, Pamph. L. 45, and was organized and did business upon the mutual plan.    Article 26 of the by-laws provides as follows : " The following property can, under no circumstance, be insured by this company, viz. : All buildings situated within fifty yards of a railroad on which steam-power is employed, as forges, furnaces, rolling-mills, paper and oil-mills, cotton-factories or machineries driven by steam-power." * * * Article 34 provides : " If the owner of an insured building should convert it to some other purpose, or should carry on therein any of the trades specified in article 26, the policy of such insured building shall not be considered valid or binding upon the company for such length of time as it shall be appropriated to such purposes ; but a man may employ necessary laborers or mechanics of all description in the house or other buildings for the purpose of renewing or improving them, without forfeiting any of the advantages guaranteed him by his policy."

Section 8 of the charter provides as follows : " Suits at law may be prosecuted and maintained by any member against the said company for losses and damages by fire, if payment be withheld or refused for more than three months after the company shall have been notified of such losses.    No member of the company, not being in his individual capacity a party to the suit, shall be incompetent as a witness on account of being a member of the company."

Plaintiff's barn was destroyed by fire November 20th 1875, caused by the explosion of the boiler of a small portable steam-engine which the plaintiff had hired for the purpose of threshing his crops.    The engine, boiler and the fire under it were placed at a distance of about thirty-two feet from and outside of the barn, and the machinery threshing the crops was within the barn, driven by a strap or belt communicating with the steam-engine outside. The engineer lighted the fire about six o'clock in the morning, and went to breakfast.    In about fifteen minutes afterwards the explosion occurred, and in a few minutes the barn and its contents were on fire.    The plaintiff testified : " We were sitting at the table at breakfast ; the engineer ate but little, and he went out before it exploded, but he did not reach it, I suppose.    The engine was on a small wagon, and it tore loose and broke the barn doors in ; the doors were all shut in the evening and everything was in the inside ; there was nothing outside.    As soon as I came out I saw that the barn was on fire."    The engineer testified : " Saturday morning I went there and got some chips and one thing and another and started a fire and put on a couple of shovels of coal, closed the door and went in to breakfast.    We often did that, for it would be half an hour, and we would not have steam up then. We went in, took our breakfast, and when I came out and looked

[Farmers' Mut. Fire Ins. Co. *v.* Moyer.]

out of the door I found it did not work as usual, and when I got five or six steps from the porch it exploded.  We ran out and saw we could not do anything, but the fire was all through the barn. We got the cattle out, and everything burnt down except the cattle. It may have been twelve or fifteen minutes I was away from the engine."

It was in evidence that at the time when the contract of insurance was made, in April 1866, threshing with steam-engines as a motive power was unknown, such mode of threshing having been introduced about the year 1874.  Also, that Moyer, the plaintiff, at a meeting of the directors, stated that one Mantz, had put a steam-engine in his tannery, which Moyer said was entirely against the rules of the company, particularly by-law 26.  Then he made a motion, after it was fully discussed, and Mr. Ebling was instructed to inform Mr. Mantz that such was the case, that his insurance was to be null and void, as he had violated the laws of the company, and it was so placed on the minutes.  Mr. Mantz's insurance money was subsequently returned to him.

The policy contained, inter alia, the following provision : " The loss or damage to be estimated according to the true and actual value of the property at the time the same shall happen, and to be paid within three months after due, and proof thereof made by the insured, in conformity to the charter and by-laws."

The plaintiff gave notice of the fire to the secretary of the company on the 23d of November 1875, three days after the fire, and furnished the formal proof of loss December 7th 1875.  In the mean time, at a meeting of the directors, on November 27th 1875, the plaintiff appeared, and what then transpired is thus recorded in the minutes :

"Next in order was to hear the claims of George K. Moyer, whose barn and the contents were totally destroyed by fire on Saturday, November 20th 1875, on account of a steam-engine, which was used for threshing and exploded.  Henry S. Kern, one of the viewing committee, was noticed on the 24th inst. to examine the fire, but did not receive the letter.  George K. Moyer affirmed and says that the boiler exploded and that set the barn on fire. On motion of G. S. Ebling it was moved and seconded that the barn and contents of George K. Moyer shall not be paid, except compelled by law."

The plaintiff presented, inter alia, the following point : " That the by-laws 26 and 34 do not contain any prohibition of the use of a steam threshing-machine in the manner it was shown under the uncontradicted evidence of this case the same was used."

Ans.  " We would so understand the evidence, but it is for your consideration."

The defendant presented, inter alia, the following points :

1.  That under the uncontradicted evidence in this case, no proof

of loss was furnished to the company by Moyer till the 7th day of December 1875, and as by the terms of the policy the insurance was not payable till three months after such proof was furnished, and the suit in this case was instituted on 26th day of February 1876, the verdict of the jury must be for the defendant, the suit having been brought prematurely. The court answered this point substantially as follows: The policy of course is the contract between the parties, and they are bound by its terms and conditions. The construction we put upon the clause which provides that the loss is "to be paid within three months after due, and proof made thereof by the insured in conformity to the charter and by-laws," is that the evidence of the loss must be furnished three months before the suit is brought, unless the company did something to waive it. The point made on the part of the plaintiff is, that as the barn was a total loss, and the company had notice of the total loss more than three months before the suit was brought, the barn itself cannot be involved in this point. It has been held when the contents have been destroyed, to simply say that the barn was destroyed "and its contents," is not sufficient, but notice must be given of the contents in detail which were in the barn at the time of the fire. It would seem that this was not complied with until in December, by the notice prepared by Mr. Hughes, in which the contents were specified. This would be less than three months before the bringing of this suit, and would prevent a recovery so far as the contents of the barn are concerned, unless the company did something to waive the production of notice at an earlier date, or the production of any notice whatsoever. We think there is a question for your consideration at this point. The board of directors met on the 27th of November, and took into consideration a notice which they had received, as it would appear from their minutes, in reference to the loss sustained by Moyer of this property, under the policy of insurance which the company had issued to him. It would appear from Moyer's testimony that he was present.

They adopted a resolution not to pay him, and that they would not recognize any liability whatsoever, upon the ground that he had no right to take the machine upon the premises at all, not upon the ground of want of notice, but because he had violated the agreement by taking the machine upon his premises. What is the object of the notice? plainly to notify the company of the contents, that so much hay and grain, &c., were destroyed, and the value, so as to enable them to ascertain what they were to pay. But when they said that they would pay nothing, and denied any liability, was it not a waiver of any notice, as to what contents of the barn were? If you find that by this action they waived the necessity of the notice, as required by the policy, the delay would not prevent the plaintiff from recovering here, if you find he has a

right to recover. It is for you to determine whether there was a waiver.

8. "That the true construction of the charter, policy and by-laws prohibits the insurance of any building or barn which is located within fifty yards of any steam-engine, *or within which any steam-engine is used.*"

Ans. "We will answer this in the negative, in view of the language employed in the by-laws, although it is a question we are not entirely clear upon as to what construction shall be placed upon it."

10. "That under all the evidence in this case the verdict of the jury must be for the defendant."

Ans. "We decline to so instruct you, as it would be taking the whole case from your consideration."

Verdict and judgment for the plaintiff for $2492.47. The defendant took this writ of error assigning for error the answers to the points as above given.

*F. W. Bechtel* and *George R. Kaercher,* for the plaintiff in error.—This being a mutual company the charter, by-laws and policy constituted the contract, and the construction of these written papers was for the court as a matter of law. Beatty *v.* Lycoming Ins. Co., 2 P. F. Smith 456; Mitchell *v.* Lycoming Ins. Co., 1 P. F. Smith 402. The contract is to be construed with reference to its object and spirit, the intention of the parties, the circumstances under which it was made, and by calling in aid the construction the parties themselves put upon it before the alleged breach: Coxe *v.* Freedley, 9 Cas. 124; Miners' Appeal 11 P. F. Smith 283; Foster *v.* McGraw, 14 P. F. Smith 464; Allison's Appeal, 27 P. F. Smith 221; Bickford *v.* Cooper, 5 Wright 142. Can any reasonable man doubt that the introduction of a steam boiler and engine within 32 feet of the barn connected by a belt with the threshing machinery within the barn, was a violation of the spirit and meaning of the contract that "under no circumstance" could any building be insured situate within 50 yards of any railroad, as mills, factories, or machineries driven by steam-power. Or that it infringed the provision that "if the owner of an insured building should convert it to some other purpose * * * the policy of such insured building shall not be considered valid or binding upon the company for such length of time as it shall be appropriated to such purposes." These provisions are not drawn with the utmost verbal skill, but the farmers who were the members of this company could understand their import. This intent was to prohibit the insuring of any building in or near which steam was used, and to prevent any change in the use of the building which might tend to increase the risk, particularly the proximity to steam factories or machinery, and if such change was

[Farmers' Mut. Fire Ins. Co. *v.* Moyer.]

made by the assured, to suspend the policy for the time being. Such is the law independent of the by-laws: Diehl *v.* Adams Co. Mut. Ins. Co., 8 P. F. Smith 443; Franklin Fire Ins. Co. *v.* Brock, 7 Id. 74; Flanders on Fire Ins. 335, 515, and note. But the act of Moyer was a violation of his express covenant, and an infraction of by-laws 26 and 34. What is the difference between locating a building within fifty yards of machinery driven by steam-power, and locating machinery driven by steam-power within fifty yards of a building. The barn was formerly used for the purpose of threshing by hand or horse power; it was converted by the assured to the "other purpose" of threshing by steam. Moyer knew well that this was in violation of by-law 54, as proved by the fact that he had previously insisted that Mr. Mantz had violated the same provision by introducing steam into his tannery, and Mantz's policy was therefore cancelled and the premium returned to him. This fire can in no sense be called an *accident* within the protection of the policy; it was the direct and natural result of an appropriate cause, viz: a *dangerous* steam-engine run by an incompetent or careless engineer.

2. The suit was prematurely brought, within less three months after due proof of loss made by the assured. The proofs were not served until December 7th 1875, and the writ issued February 26th 1876. It is true that informal *notice of the fire* was received by the secretary November 23d 1875, but there is a marked distinction between *notice of fire* and *proof of loss*. The former is to enable the company to inspect the premises and inquire into the circumstances; the latter is a sworn statement, in detail, and is a condition precedent to recovery. It is also true that the directors, at a meeting held November 27th 1875, passed a resolution that the loss should not be paid " except compelled by law." It is claimed that this action of the directors was a waiver of the proof of loss. But "a waiver never occurs unless intended or where the act relied on ought in equity to estop the party from denying it:" Diehl *v.* Adams County Mut. Ins. Co., 8 P. F. Smith 443. It will hardly be contended that the company, in passing a resolution not to pay the loss voluntarily or "except compelled by law," *intended* to waive a valid defence. But, even if it were a waiver of the proofs of loss, such waiver occurred on November 27th 1875, and the suit was still prematurely brought, February 26th 1876, less than three months from the alleged waiver.

The question of waiver as to the barn itself was not even submitted to the jury by the judge, who charged that the *barn* was not involved in the question of proof of loss; and he cited Lycoming Mut. Ins. Co. *v.* Schollenberger, 8 Wright 259; but that decision is predicated upon the fact that the policy was a valued one. In this case the policy provides " the said loss or damage to be estimated according to the true and actual value of the said

[Farmers' Mut. Fire Ins. Co. v. Moyer.]

property at the time the same shall happen." The court should have affirmed our points, and directed a verdict for the defendant.

*Guy E. Farquhar* (with whom was *F. W. Hughes*), for the defendant in error.—1. The use of the portable engine by the plaintiff certainly did not infringe the letter of any provision in the charter, by-laws or policy, and, we contend, did not violate their spirit. The building was insured as a barn, and as a barn was being used at the time of the fire. It was not converted to any other purpose, for the *purpose* is the same whether grain be threshed by flail, horse-power, wind-power or steam-power. The temporary use of a steam-engine outside the barn did not convert it for the time being into a steam-factory or mill within the provisions of by-laws 26 and 34. If the construction of the contract be doubtful, the doubt is to be resolved in favor of the assured, and against the company: Franklin Fire Ins. Co. *v.* Brock, 7 P. F. Smith 74. The question of increased risk was properly submitted to the jury: Mutual Fire Ins. Co. *v.* Coatesville Shoe Factory, 30 P. F. Smith 407.

2. The suit was not prematurely brought. Neither the charter nor the by-laws expressly require any proof of loss in the case of a *building*, but only in the case of personal property destroyed. The barn was a total loss, and the amount for which it was insured was far less than its actual value. The loss became fixed and due immediately after the fire. Sufficient notice of the total loss was given to the company within three days thereafter—more than three months before suit was brought. The company claimed that the true meaning of the policy was that the loss was not payable until three months after proof of loss made, and the court below sustained that view, but left it to the jury to determine whether the company had waived proof of loss. In this we think the court erred in favor of the company. This error did not hurt us, because the jury found the question of waiver in our favor. They were fully justified in so finding, because the resolution of the directors was equivalent to saying to Mr. Moyer, "We have had all the proof of loss we want. We will not pay you unless compelled to do so by law." This was final action upon a distinct ground, and was in law and in fact a waiver of all other grounds: Lycoming Insurance Co. *v.* Schreffler, 6 Wright 188; Franklin Fire Insurance Co. *v.* Updegraff, 7 Id. 350; Lycoming Mutual Insurance Co. *v.* Schollenberger, 8 Id. 259; Buckley *v.* Garrett, 11 Id. 205; Farmers' Insurance Co. *v.* Taylor, 23 P. F. Smith 342.

Mr. Justice GORDON delivered the opinion of the court, April 1st 1881.

On the 5th of April 1869, George K. Moyer, the plaintiff below,

[Farmers' Mut. Fire Ins. Co. *v.* Moyer.]

obtained a policy of insurance from the defendant company, covering his barn and its contents. The building was insured in the sum of $1500 and its contents in the sum of $1000. On the 20th of November 1875, it and all it contained were destroyed by fire. The fire which produced this destruction seems from the evidence to have originated from the explosion of the boiler of a portable steam-engine, which had that morning, or the evening before, been stationed within some thirty-two feet of the barn, for the temporary purpose of threshing grain on the barn floor, a strap being used to connect the engine with the threshing machinery. The assignments of error, though numerically four, are substantially but two, and are raised by the defendant's first and eighth points. They are as follows: 1. "That as under the uncontradicted evidence in this case, no proof of loss was furnished to the company by Moyer till the 7th of December 1875, and as by the terms of the policy, the insurance was not payable till three months after such proof was furnished, and the suit in this case was instituted on February 26th 1876, the verdict of the jury must be for the defendant, the suit having been brought prematurely." 2. "That the true construction of the charter, policy and by-laws in evidence, prohibits the insurance of any building or barn which is located within fifty yards of any steam-engine, or within which any steam-engine is used."

As to the first of these points, if indeed the uncontradicted evidence supported it, there would have been an end to the case; the plaintiff could not have recovered. But unfortunately for the defendant, such was not the case. In the first place, there was the preliminary notice of the total loss of the barn and its contents—that this was in time was admitted—and in the second place, there was the question of waiver, which the court submitted to the jury. As to the first of these, the learned judge held that the preliminary notice, so far as the barn itself was concerned, the loss being total, was sufficient without the more formal proofs.

In this he was undoubtedly correct, if the case of the Lycoming County Mutual Ins. Co. *v.* Schollenberger, 8 Wright 269, is law, for it is exactly in point. The counsel for the plaintiff in error attempts a distinction, which it seems the court below was unable to comprehend, and we must confess to a similar want of intelligence. He insists that while the policy in the case cited was a valued one, that in the case in hand it is not a valued one. Of course, this distinction, if it exists at all, must be found in some substantial difference of the wording of the two policies. Let us compare them. Schollenberger's policy covered a coal breaker, including a steam-engine, schute, screens, machinery and trestle-work, in a sum not exceeding $2500, for the term of five years. Moyer's insurance is, inter alia, upon "one bank barn of frame, 70 feet by 36 feet, for $1500," and for the term of ten years. Now as the word "for" in the quota-

tion means "in a sum not exceeding," "to the amount of," it is impossible for us to discover the difference between the two policies, or that if the one is a valued policy, why the other should not be.

As to the contents of the barn, the court held that special notice of loss was necessary, and if it were not given until December, the suit was premature, and as to them it must abate, unless there was some act of the company which was equivalent to a waiver of such notice.

On this point the learned judge held that if, at the meeting of the board of directors on the 27th of November, determination was had not to pay Moyer, or to recognise any liability whatever, on the ground that he ought not to have allowed the steam-engine to have been brought upon the premises, and that he thereby forfeited his policy, and not upon ground of want of the proofs of loss, the jury might regard such action of the company as evidence of a waiver of such proofs.

This was a correct ruling. Insurers undoubtedly have the power to waive the performance of a condition introduced into a policy for their own benefit, and it is not necessary that such waiver be express; it may be inferred from their acts, and among others of such acts is a denial of the obligation exclusively for some other reason than that of a breach of the condition : Inland Ins. Co. v. Stauffer, 9 Casey 397 ; State Ins. Co. v. Todd, 2 Norris 272.

As to the answer of the court to the defendant's eighth point, and the charge relative to the subject-matter covered by that point, we think, if in them there is any error, it is one of which the plaintiff had reason to complain rather than the defendant. It was held that the plaintiff could not recover if the use of the engine increased the risk ; in other words, the jury were left at liberty to find a forfeiture on the ground stated, but neither in the policy, by-laws nor constitution of the company was the temporary use of a portable engine for grain threshing or other economic use prohibited.

The 26th article of the by-laws prohibits the insuring of any building "situated within fifty yards of a railroad on which steam-power is employed, or of any forges, foundries, furnaces, rolling-mills, powder-mills, paper and oil mills, cotton-mills, or, in general, any mills, factories or machineries driven by steam-power." But the property in the case in hand is embraced by neither the letter nor spirit of this prohibition.

Again, art. 34 provides : "If the owner of an insured building should convert it to some other purpose, or should carry on therein any of the trades specified in art. 26, the policy of such insured building shall not be considered valid or binding upon this company for such length of time as it shall be appropriated to such purpose."

Neither is the plaintiff's case taken up by this provision ; for

1 Outerbridge—29

[Farmers' Mut. Fire Ins. Co. *v.* Moyer.]

this contemplates the conversion of the building to a purpose other than that for which it was used at the time of its insurance; an adaptation of it to some one of the occupations or trades mentioned in art. 26.   But the plaintiff's barn was converted to no such purpose; it was insured as a barn, and as a barn it was burned.

These, however, seem to be all the regulations of this company which have even a remote bearing upon this subject.   But it is only by a strained inference that either of them can be made to bear on the plaintiff's case, and it certainly would be out of all character to allow a forfeiture to be worked in favor of the company through the operation of a mere inference.

There being, therefore, no express prohibition found in the policy or rules of the company against the use of a machine of this kind in the vicinity of the barn, the question was at most one of increase of risk, and that was properly left to the jury.

There is not much doubt but that the immediate occasion of the fire was the explosion of the boiler by which the machine was driven; but this was one of those pure accidents that is not to be considered any more than the accidental breaking of a glass lantern, had that been the occasion of the fire.

Accidents will happen, more frequently, perhaps, with steam-engines than some other machines; nevertheless, they are accidents, and as such are beyond human forecast, and if insurance companies desire to prohibit even the temporary use of steam on or near the premises they insure, they should provide against such use in their policies, but it will not do for them to attempt to make rules and regulations, intended for a very different condition of things cover an emergency not previously contemplated.

The judgment is affirmed.