German American Insurance Company *versus* Hocking.

An insurance company issued a policy of fire insurance on a building, permitting concurrent insurance, and stipulating that in case of loss, that immediate notice should be given to the company, and as soon thereafter as possible, the assured should render a particular account, and proof thereof, setting forth *inter alia*, the actual cash value of the property destroyed immediately before the fire, the amount of other insurance, and a plan and specifications of the building destroyed. By the terms of the policy, where there was concurrent insurance, each company was liable only for its proportion of the loss, which was to be paid within sixty days after due notice and proof of loss had been made by the assured, and received at the office of the company, unless the company had given notice of its intention to rebuild or repair the damaged premises. The building insured was totally destroyed by fire. Notice of this was given the company on the following day. More than sixty days after this, the secretary of the company wrote the assured, calling his attention to the condition of the policy, requiring a particular account and proofs of loss of the fire. More than a month after this the assured furnished the company proof of loss, but did not forward plans and specifications of the building destroyed. Twenty days after this, the assured brought suit on his policy. *Held*, That the proofs of loss were conditions precedent to the bringing of an action on the policy of insurance, and while under the circumstances it might be inferred that the company had waived the production of the plan and specifications, yet this would not deprive the company of the time stipulated, in which to obtain the information elsewhere, or to determine whether they would rebuild the building, or pay the loss, and the suit having been brought within that time, was premature and could not be maintained.

February 10th, 1887. Before MERCUR, C. J. GORDON, TRUNKEY, STERRETT and CLARK, JJ. PAXSON and GREEN, JJ., absent.

ERROR to the Court of Common Pleas of *Somerset County:* Of January Term 1887, No. 72.

Covenant by George H. Hocking brought April 17th, 1885, against the German American Insurance Company of Pennsylvania, on a policy of fire insurance issued by the defendant to the plaintiff.

The facts of the case as they appeared on the trial before BAER, J., were as follows:

On the 3d day of December, 1884, the defendant issued a policy of fire insurance to Geo. H. Hocking, for $1000. "On his two story, frame, tin-roof building, occupied for mercantile purposes and family residence, situate on west side of Centre street, Meyersdale, Penn'a," &c., &c., "and other concurrent insurance permitted," to run from the 29th Nov., 1884, to the 29th Nov., 1885.

At the time this policy was issued, Hocking had the follow-

ing policies of insurance on the same property, namely, in the Howard Insurance Company of New York, for $2000, dated 24th March, 1884, running to 24th March, 1885, and in the Commercial Union Assurance Company of London, for $1000, dated 1st Dec., 1884, and running to 1st Dec., 1885.

In the policy of the Howard Insurance Company it was provided, "$2000 additional concurrent insurance;" and in the policy of the Commercial Union it was provided, "Privilege of other insurance," &c.

By the terms of the policy it was provided, *inter alia*, as follows :

FIRST. "And said company hereby agrees to make good unto the said assured, his executors, &c., all such immediate loss or damage, not exceeding in amount the sum insured, nor the interest of the assured in the property, except as herein provided, &c., &c., &c.; the amount of loss or damage to be estimated according to the actual cash value of the property, at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at this office, in accordance with the terms and provisions of this policy, unless the property be replaced, or the company has given notice of its intention to rebuild, or repair the damaged premises."

SECOND. Condition VII. "In case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured therein, whether such other insurance be by specific or by general or by floating policies. Re-insurance for any other insurance company to be on the basis of joint liability with said company, and in the event of loss this company to pay its proportion of said loss sustained by said company under their policy.

THIRD. Condition X. Persons having a claim under this policy shall give immediate notice thereof to the company, and as soon thereafter as possible, render a particular account and proof thereof, signed and sworn to by them, setting forth, 1st, a copy of the written portion of this policy and all endorsements thereon ; 2nd, other insurances, if any, on same property or any portion thereof, with copies of the written portion of each policy and endorsements thereon ; 3rd, the actual cash value of the subject insured, at the time immediately preceding the fire ; 4th, the ownership of the property insured, and the interest of assured in same ; 5th, for what purpose and by whom the building insured or containing the property insured and the several parts thereof, were used at the time of the loss ;

6th, if the claim be for loss on a building, the assured shall furnish a plan and specifications of the building destroyed; 7th, the date of the loss and the amount thereof; 8th, how the fire originated so far as said persons know or believe," &c., &c. It is further provided, that " until such proofs as above required are produced, and examinations and apprisals permitted, the loss shall not be payable. And this policy is made and accepted expressly on the foregoing terms and conditions."

On the 4th of December, 1884, the building was entirely destroyed by fire. The next morning the company received notice of the loss. The value of the building was from $4000 to $4500.

The secretary of the company wrote Hocking on the 21st of February, 1885, calling his attention to condition 10 of the policy, and stated " as soon as we receive necessary proofs, &c., we can determine whether we owe you anything, and if so, how much."

On the 28th of March, 1885, proofs of loss were made, which contained notice of the amount of insurance in the Howard Insurance Company and in the Commercial Union Assurance Company of London, in the former, $2000, and in the latter, $1000; but the assured did not " furnish a plan and specifications of the building destroyed," as required by the terms of the policy.

The only proofs of loss were those made on the 28th of March, 1885, and Hocking, without waiting 60 days, in which, the company had time to pay, provided the proofs were properly made, and the liability of the company fixed, brought suit, on the 17th of April, 1885, in defence the plaintiff in error alleged that the right of action had not then accrued.

The original summons was not served. An *alias* summons issued June 1st, 1885, and was served 15th June, 1885.

The defendant requested the court to charge *inter alia*:

1. That inasmuch as it has been proven in this case that the fire took place on the 4th or 5th of December, 1884, and proofs of loss were not made out until the 28th of March, 1885, the plaintiff did not comply with condition No. 10 of the policy, which requires the plaintiff to furnish proofs of loss as soon thereafter as possible; and the verdict must be for the defendant. Refused.

2. That the plaintiff in his proofs of loss furnished, did not comply with condition 10 of the policy, which required him to furnish a plan and specifications of the building; and therefore the verdict must be for the defendant.

Refused except as answered in the general charge.

3. That inasmuch as the proofs of loss were made on the 28th of March, 1885, and as the company, under the terms of

the policy, had 60 days time in which to make payment, "after due notice and proofs of the same shall have been made by the assured and received at the office of this company," and as the suit was brought on the 17th of April, 1885, the right of action had not accrued to the plaintiff; and the verdict must be for the defendant.

This point on the facts stated we reserve to be considered afterwards; it is purely a question of law on the facts stated.

After verdict the court made the following order:

*Sur* motion for new trial and motion to enter judgment *non obstante veredicto.* On due consideration after full argument, the rule for new trial is refused and judgment ordered to be entered on the verdict.

4. That under the pleadings and evidence the verdict must be for the defendant.

In the general charge the court instructed the jury *inter alia* as follows:

It is claimed by the defendant that the particular account that is required of the claim was not furnished by the assured as soon as possible after the notice and sworn to by him, setting forth the requirements named in article 10 of the policy; but if you find that notice had been given of a total loss and that the number of the policy was given, such a notice or statement of loss, though it was by the first or preliminary notice given by telegraph, was a substantial particular statement, and was a compliance with the condition requiring it to be made; and as the policy does not declare a forfeiture for non-compliance with the stipulations contained in article 10, the jury must, from all the evidence, determine if such particular statement under oath were given in a reasonable time; and if it were, the requirement of the policy has been substantially complied with so far as relates to notice. . . . . . The defendant says the particular statement furnished did not furnish a plan and specifications of the building destroyed; and therefore, he insists, there can be no recovery because of that. If this, by the terms of the policy, were to be construed as a condition precedent, upon the non-performance of which the policy was to be forfeited, such omission would be fatal; but we do not so read and construe the contract. On this trial the dimensions and plan of the building were proven, though no draft was produced here; and as the defendant offered no evidence indicating any desire to adjust the loss or to rebuild, and if you find that the defendant company declined to acknowledge the liability, then we submit to the jury the question whether or not, under all the evidence and circumstances in this case, and in the absence of any request for plans and specifications, the clause in question was waived.

. If the company did not conclude to resist payment, plans and specifications would have been very important because they would have been necessary then in determining whether the company would exercise its right under the policy to pay the money or to rebuild. But if it relied on defeating a recovery on any other ground, such conduct might, by the jury, be considered on the question of whether it was waived; and if found to have been waived, it would not bar a recovery now.

Verdict for the plaintiff in the sum of $1100.66 and judgment thereon, whereupon the defendant took this writ assigning for error the answer of the court to the defendant's points and that portion of the general charge above given.

*W. H. Koontz.*—Our fourth point was reserved by the court below, but was afterwards refused and judgment ordered to be entered on the verdict. And herein, as it is viewed by the counsel for plaintiff in error, is the principal error in this case.

In the case of Camberling *v.* McCall, 2 Yeates, 281, it is held " when a policy of insurance expresses that the loss shall be paid three months after proof made thereof, a suit can not be supported until the three months have elapsed." In delivering the opinion of the court McKean, C. J., says:   "The clause in the policy, that the loss shall not be demanded till within three months after proof made appears highly material. The parties have mutually stipulated that no duty shall arise till within a certain period after notice given of the loss, and the commencement of a suit before that time has elapsed is premature.   Two reasons may be suggested for this delay: 1st, The underwriters have thereby an opportunity of investigating the justice of the plaintiff's claim; and, 2d, an interval is allowed them for making up the money, if his pretensions are well founded."   See also on this point Kemble *v.* Hamilton Fire Insurance Company, 8 Bosworth, (N. Y.) 495; Bryant *v.* Commonwealth Insurance Company, 6 Pick., (Mass.) 131; Halton *v.* Provincial Insurance Company, 7 Upper Canada 355; Davis *v.* Davis, 49 Maine, 282; County Mutual Live Stock Asso. *v.* Evans, 13 W. N. C., 203.

*Coffroth & Ruppel* for defendant in error.—As the loss was total and the company were immediately so notified, further notice was not necessary: Lycoming Ins. Co. *v.* Schollenberger, 8 Wr., 262; Farmer's Mut. Fire Ins. Co. *v.* Moyer, 1 Out., 441; Home Ins. Co. *v.* Davy, 2 Out., 280; Penna. Fire Ins. Co. *v.* Dougherty, 6 Out., 568.

Had further notice fleen necessary it was waived: Hall *v.* Ins. Co., 2 Phila. 332; Ins Co. *v.* Mann, 13 W. N. C., 345;

Western Assurance Co. *v.* Ackerman, 2 Penny., 145; Susque-hanna Fire Ins. Co. *v.* Cusick, 16 W. N. C., 136; Lycoming Ins. Co. *v.* Schreffler, 6 Wr., 188.

This company resisted payment of the claim, on grounds wholly independent of the question of the suit having been prematurely brought, and therefore that defence should not avail now. Farmers' Ins. Co. *v.* Moyer, 1 Out., 449; Farmers' Ins. Co. *v.* Meckes, 10 W. N. C., 306.

If it be thought that the second or alias summons is a continuance of the first case, then we ask your Honors to permit an amendment of the record, by striking out the word "alias," in the case at No. 55, September Term, 1885. That this court has power to permit such an amendment, and in a proper case, such as this is, will do so, cannot, we think, be doubted : Feig *v.* Meyers, 6 Out., 10.

Mr. Justice CLARK delivered the opinion of the court March 7th, 1887.

On the 3d December, 1884, the German American Insurance Company of Pennsylvania issued a policy of fire insurance, to George H. Hocking, in the sum of $1000, " on his two story, frame, tin roof building, occupied for mercantile purposes and family residence, situate on west side of Centre street, Meyers-dale, Penna., etc., etc.; the company covenanted to make good unto the assured, all loss, not exceeding in amount the sum insured, as should happen to the premises from fire, from the 29th November, 1884, to the 29th November, 1885;" " the amount of loss or damage to be estimated, according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured, and received at this office, in accordance with the terms and provisions of this policy, unless the property be replaced, or the company has given notice of its intention to rebuild, or replace the damaged premises." By a further provision of the policy, concurrent insurance was permitted, and the insured, in case of loss, was entitled to recover no greater proportion of the loss, than the amount of the policy, now in suit, should bear to the whole amount of the existing insurance. The insured, at the time of the loss held concurrent insurance to the amount of three thousand dollars.

The tenth condition of the policy required that persons, having a claim under it, should give immediate notice thereof to the company, and, as soon thereafter as possible render a particular account and proof thereof, signed and sworn to by them, setting forth first, a copy of the written portion of the policy, etc.; second, the amount of other insurance, etc.; third,

the actual value of the property burned, etc.; fourth, the ownership, etc..; fifth, for what purpose it was used, etc.; sixth, if the claim be for a loss on a building burned, he shall furnish a plan and specification of the building destroyed, etc.; seventh, the date of the loss, etc.; and eighth, how the fire originated.

On the 4th December, 1884, the building was totally destroyed by fire, and the next morning the company received notice of a total loss. The building was worth from $4,200 to $5,000. Proofs were not furnished until 28th March, 1885; the suit was brought on the 17th April, 1885. The company contend, that the plaintiff below did not comply with the tenth condition of the policy, in two essential particulars; first, he did not furnish proofs of loss as soon as required, and second, that the proofs which were furnished did not contain a plan and specification of the building destroyed, and, therefore, that the plaintiff cannot recover, or at the least, the suit was permaturely brought.

The plaintiff below, in reply to these several matters of defence say, first, that as the loss was total, the notice, which was given immediately after the fire, was sufficient; and second, that the company accepted the proofs which were furnished without objection, thereby waiving the matters which were omitted therein, and therefore, assuming the original notice of the fire to have been sufficient, the suit was brought more than sixty days thereafter, and cannot be abated on that ground.

In support of their first proposition the plaintiff below, cites Lycoming Ins. Co. *v.* Schollenberger, 44 Penn., 259; in that case, one of the conditions of the policy was, that in the event of loss, notice should be given forthwith, and a particular statement of the loss should be furnished to the company, within thirty days. The subject of insurance was a coal breaker; it was insured in the sum not exceeding $2,500, and the loss was total. A notice was forthwith forwarded to the company, giving the number of the policy, the amount of the insurance secured thereby, and stating that "the coal-breaker was burnt down," on that day. In the decision of that case, the court treated the notice as a substantial compliance with the conditions of the policy. "This was as particular a statement" says Mr. Justice THOMPSON, "as could be given; the subject of insurance was a single structure; the amount to be paid for it, in case of loss, was fixed and referred to, and it was reported as a total loss; the particular statement required would have contained but this, in substance, if it had been made."

To the same effect are the cases of Farmers' Mutual Co. *v.* Moyer, 97 Penn., 441; Home Ins. Co. *v.* Davis, 98 Penn., 280; Penna. Fire Ins. Co. *v.* Dougherty, 102 Penn., 568; Susque-

hanna Co. v. Staats, Id., 529, and Same v. Cusick, 16 W. N. C., 133. In all these cases, it was held, that a *particular* statement, or an account of the several items of a loss, could not, in the nature of the case, have been intended, where there was only a single subject of insurance, and the loss was total, that such a statement was obviously only meant to be furnished, when there was a loss of several distinct items of insured property or when the loss was partial only.

But it will be observed, that the policy in suit requires that certain specific matters shall be stated to the company, under oath, which by its special provisions are essential, in the ascertainment of the extent of the company's liability, when there is but a single subject insured, and a total loss, as the particular statement is, where there are numerous subjects, or the loss partial. By the express terms of the policy, concurrent insurance was permitted and the insured, in case of loss, was entitled to recover no greater proportion of the loss, than the amount the policy bore to the amount of the existing insurance; and the second clause of the tenth condition of the policy, thereupon, provides that the assured in his particular account of the loss, shall set forth the " other insurance, if any, on same property, or any portion thereof, with copies of the written portion of each policy, and endorsement thereon." Another of the terms of the policy is, that the property destroyed may be replaced or rebuilt, or the damaged premises may be repaired, and, therefore, the sixth clause of the same condition provides, that " if the claim be for the loss on a building, the assured shall furnish a plan and specification " thereof.

The clauses quoted, illustrate the distinction which, we think, may be drawn fairly between the cases cited and relied upon by the defendants in error, and the present case; it must be conceded that these clauses have especial application to a case like this. By the terms of this policy concurrent insurance was expressly permitted, and at the time of the fire actually existed, to the amount of $3,000; true, the loss is estimated at $4,000, and upwards, but how was the company to know what was the amount of the concurrent insurance, or that the whole amount of the insurance did not exceed the total loss. In order therefore that the company might accurately ascertain the amount of their liability under the policy, it was important that they should be furnished with what they had expressly provided for, a statement of the amount of the other insurance. And, further, that the company might intelligently exercise the option to rebuild, it was equally important that they should have what it was the undoubted duty of the assured to supply, the plans and specifications of the property destroyed. The loss was not payable for sixty days after such statements were

made and furnished to the company, and the contract was accepted expressly subject to the performance of these conditions·

It follows that no suit could be brought until these conditions were complied with, nor for sixty days thereafter, which time the company reserved after the extent of their liability could be determined from the proofs, either to pay the money, or to give notice of their option to replace the property.

Proofs were made however and furnished to the company on the 28th of March, 1885; they would appear to have been furnished in compliance with a suggestion from the secretary of the company, in writing, dated 20th February, 1885, in which he calls the attention of the assured to condition X of the policy and says: "As soon as we receive the necessary proofs, in accordance with the requirements of our policy, we can determine whether we owe you anything, and, if so, how much." The sixty days, it will be observed, had then fully expired and if the proofs were afterwards promptly furnished, or within a reasonable time, in compliance with the secretary's suggestion and request, we think the company might well be supposed to have waived the previous delay.

But the proofs which were furnished did not contain plans and specifications, as required. The assured does state therein "that he will furnish whenever required by the said company, as full particulars as he can as to the construction of the building insured, its dimensions and condition at the time of said fire, and such additional information as shall be required by said company concerning said property; but notwithstanding this averment of his willingness so to do, it is nevertheless true that he did not furnish the plans and specifications. as it was his plain duty to do. On receipt of these defective proofs, therefore, the company had the undoubted right to adhere to the requirements of the policy, and to reject the proofs, with notification to the assured, or return them for amendment. But the company was not bound to reject the proofs; the condition of the policy was inserted for the benefit of the company, and it was competent for the company to waive its provisions. The information necessary for the exercise of the option, might be obtained elsewhere. But it is plain that the company had sixty days after the proofs, as made, were furnished, or after the making of the amended proofs, as the case may be, in which to decide whether they would rebuild, or pay the money.

The proofs were furnished, as we have said, on the 28th March, 1885, and suit was brought on the 17th April, thereafter. In this interval the proofs remained with the company; no objection was made either to the form or substance thereof. It was not until 24th August, 1885, that the company in any way indicated their disapproval. It cannot be doubted that

[Commercial Union Assurance Co. *v.* Hocking.]

the proofs were intended as a substantial compliance with the conditions of the policy; if they had been rejected and notice given to the assured, or if they had been returned with the reasons for non-acceptance, more complete proofs would doubtless have been furnished, the assured having averred his willingness to furnish the fullest information on this point, "whenever required by the company." The proofs of loss were but conditions precedent to the bringing of an action, and not of the insurance, and, we think, under the circumstances, it might well be inferred that the company had waived the production of the plans and specifications.

But this would not deprive the company of the time stipulated in which to obtain the information elsewhere; they had sixty days in which to decide, and the suit having been brought within that time was premature. The alias summons was, of course, but a continuance of the original.

The judgment is reversed.