## DAVID SNOWDEN v. KITTANNING INS. CO.

ERROR TO THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 8, 1888—Decided October 29, 1888.

1. It is competent for an insurance company to waive performance of a formal condition introduced into a policy for its own benefit, and such waiver may be inferred, either from acts evidencing a recognition of liability, or from a denial of obligation for other reasons, exclusively, to be submitted to the jury upon sufficient evidence thereof.

2. A condition in a policy of fire insurance that a loss shall not be payable until a certain period after complete proofs and adjustment thereof, is waived, if, without such proofs made, the company object solely to the amount claimed and agree with the insured to the ascertainment of the damage by appraisers, and to pay the loss thus ascertained at once.

3. When, without formal proofs, the adjustment of a loss is thus made dependent upon the award of appraisers to whom the amount is submitted, the company is liable for the loss thus ascertained, although by the terms of the policy it is not liable for a greater sum than two thirds of the actual value of the building burned.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; GREEN and HAND, JJ., absent.

No. 13 October Term 1888, Sup. Ct.; court below, No. 335 June Term 1886, C. P.

On May 22, 1886, an action of debt was brought by David Snowden against The Kittanning Insurance Company to recover upon a policy of fire insurance dated August 29, 1884, in $1,000, $400 of which was upon a two-story frame building. The pleas did not appear upon the paper books.

At the trial on June 17, 1887, the policy read in evidence contained a provision that "this company shall not be liable for a greater sum than two thirds the actual cash value of the buildings burned;" another provision that persons sustaining loss or damage by fire should forthwith give notice thereof in writing to the secretary of the company, and, as soon after as possible, should deliver proofs of loss of a specified character, with plans and specifications, if required, and should exhibit to the company and permit to be examined, handled and appraised, any property damaged on which any loss was claimed; "and until such proofs and declarations are produced, and such appraisals and examinations permitted by the claimant, and until such plans and specifications (if required) are furnished, the proofs shall not be considered complete, nor the loss due until ninety days thereafter;" and a further provision: "Payment of losses shall be made ninety days after complete proofs and adjustments thereof, at the office of the company."

A fire occurred on October 23, 1885, which entirely consumed the dwelling-house insured; and on October 26th, notice was given to the company as follows:

October 26th, 1885, The Kittanning Ins. Co., Kittanning Pa. I thought I would notify you that my house caught fire somehow Friday, the 23d of October, and burned. Total loss: in Wayne township, Armstrong Co., Pa. DAVID SNOWDEN, Bellknap, Pa.

About the middle of November following, a representative of the company visited the ruins and claimed that the building had been insured for more than it was worth, but proposed that the plaintiff would select a carpenter and the company one, and the company would pay whatever they would fix upon as the loss. The plaintiff did not agree to this at the

time, but subsequently he met the superintendent of the company at its office, when the proposition was again made and then accepted.

The plaintiff testified: " In that agreement with Mr. Crawford and Mr. Brown, the money was to be paid quick after the appraisers found the value; right away they were to pay the money as quick as the value was made." This testimony was not contradicted by the witnesses called for the company.

On January 22, 1886, the company and the plaintiff signed an agreement appointing F. M. King and E. Morrow, with a third person to be appointed by them, if necessary, who should under oath "appraise at its actual cash value the damage claimed to have been caused by said fire to the property insured," etc. These appraisers were sworn, and on February 18, 1886, made a report that "after having taken into consideration the age, condition and location of the premises, previous to the fire, and making proper deductions for the walls, materials and portions of the building saved, we have appraised the damage to be $300."

On March 8, 1886, no payment having been made by the company, formal proofs of loss were made out by the plaintiff and served, but on April 5, 1886, these proofs were withdrawn from the company's office.

The court, NEALE, P. J., charged the jury and answered the points presented as follows:

I feel constrained to shorten this case. I readily perceive that this plaintiff had what occurred to the court to be a valid claim against this insurance company; but there seems to have been in the policy of insurance that was issued by this Kittanning Ins. Co., a provision which we hold is binding in this case. It is this: That the insurance company shall have ninety days after complete proof or adjustment of loss has been made, within which to pay the amount that may be adjusted, the amount that they may, after examination of the proofs of loss, etc., determine is due to the assured. Now then, it is possible that the original proof of loss, if it stated the loss, or the original notification as given to the Kittanning Ins. Co., if it stated the loss, might be sufficient upon which to base a recovery as claimed by the plaintiff's counsel. [But there may be

waivers by both parties, and the evidence in this case clearly shows that the plaintiff did not stand upon that original notification of his loss.] [6] Subsequent to that, they had an adjustment of the value made by appraisers mutually chosen. That appraisement was made on February 18, 1886. It was made upon agreement, or under an agreement of submission, for the specific purpose, to two appraisers, and that submission was to the effect that those appraisers should estimate the actual damage to the property of David Snowden. They estimated the actual damage to the property of David Snowden at $300, and so made their return on February 18, 1886, to the insurance company.

After that, the plaintiff in the case proceeds to perform another duty that was incumbent upon him, under the provisions of this policy, and actually makes out and presents to the insurance company, what are technically called his proofs of loss, in which he claims that the actual amount of loss to him under this policy, is $300. And there comes the dispute as to that, at least it is apparent from the evidence, that the insurance company did not accept that amount as the actual amount due from them, and the authorized agent of the plaintiff, then, without any reason for the act, withdraws and takes away those proofs of loss after having actually submitted them to the company. [We say to you that those proofs of loss submitted to the company were a part of the agreement on the part of this plaintiff before he could recover anything from this insurance company, and after having submitted those proofs of loss, it was his duty to wait the term of ninety days before he brought suit.] [4] He failed to do so, and brought his suit before the time that he had agreed in accepting this policy of insurance, had expired, and within which the company are to adjust the loss. This suit was actually brought within that time, and we must hold with the view we take of it [if there was anything on the part of the insurance company waiving the filing of proofs of loss, the plaintiff did not take advantage of that waiver], [5] but stood upon the agreement of his policy and actually filed and submitted to them his proofs of loss, which was done on March 8th, and then brought his suit within the time the company was allowed, by virtue of their policy, to make an adjustment and payment, and having done so we have to

Charge of Court below.

say to you, that we believe this suit is prematurely brought, and under all the evidence the plaintiff cannot recover. It may be entirely contrary to the views of the jury, as to the merits of the case, as it might also be to the court, but however that may be, the jury must in a matter of this kind, follow the law as the court may declare it. The instructions of the court are that the plaintiff cannot recover in the action as now brought.

The defendant respectfully asks the court to charge the jury as follows:

· 1. That under all the evidence the plaintiff is not entitled to recover.

Answer: Affirmed.[1]

2. That even if plaintiff is entitled to recover in this action he cannot recover more than two thirds of the actual cash value of the property burned, which, under the submission and appraisement in this case, is the sum of $200 with interest from June 7, 1886.

Answer: Affirmed.[2]

3. That in order to comply with the conditions of said policy in suit, the plaintiff must have delivered to the defendant company proofs of loss at least ninety days before bringing suit. The delivery of such proofs of loss on March 8, 1886, and the subsequent withdrawal of them on April 5, 1886, before time was allowed the defendants to examine and approve or disapprove of them, is not a compliance with the terms and conditions of said policy as found in the 20th paragraph in the policy in suit.

Answer: This point is refused as stated.

5. The proofs of loss having been furnished on March 8, 1886, the defendant was not liable to pay the plaintiff, and did not owe him anything until the expiration of ninety days after the date of said furnishing of proofs of loss under the conditions of the policy in suit. The plaintiff having brought his action on May 22, 1886, it was premature and cannot be maintained, and the verdict must be for the defendant.

Answer: Affirmed.[3]

The jury returned a verdict in favor of the defendant. Judgment having been entered, the plaintiff took this writ and assigned for error:

1–3. The answers to defendant's points.[1 to 3]

4–6. The parts of the charge embraced in [ ] [4 to 6]

*Mr. W. D. Patton* (with him *Mr. J. R. Henderson*), for the plaintiff in error:

1. Was not the notice of October 26th as particular an account of the plaintiff's loss as the nature of the case would admit? It was as full as the notice held sufficient in Lycoming Co. M. Ins. Co. v. Schollenberger, 44 Pa. 259; Farmers Mut. F. Ins. Co. v. Moyer, 97 Pa. 441; Home Ins. Co. v. Davis, 98 Pa. 280; Penn. F. Ins. Co. v. Dougherty, 102 Pa. 568; Susq. Mut. F. Ins. Co. v. Staats, 102 Pa. 529.

2. The conduct of Crawford, the agent, and of Brown, the superintendent of the company, after the loss, was sufficient to be submitted to the jury to find a waiver by the company of formal proofs. No objection was made except that the plaintiff was insured for too much. The question of loss was the only question raised, and that question was submitted to the appraisers by an agreement made at the request of the company's agent and superintendent. Such evidence should have been submitted to the jury: Susq. Mut. F. Ins. Co. v. Staats, 102 Pa. 529; Farmers Mut. F. Ins. Co. v. Moyer, 97 Pa. 441; Thierolf v. Universal Ins. Co., 110 Pa. 37; Niagara F. Ins. Co. v. Miller, 120 Pa. 504.

3. True, formal proofs of loss were served on March 8th, but they were withdrawn, and the company was in no way injured thereby. "At the time I lifted the proofs of loss, they would not pay the loss and I wanted to bring suit." Here was an absolute refusal to pay, which was a waiver, not only of the proofs of loss, but of the condition that suit should not be commenced until the expiration of ninety days: Farmers Mut. F. Ins. Co. v. Ensminger, 12 W. N. 9. It is true there is some conflict of testimony in the case, but when there is any evidence of waiver, the question must be submitted to the jury: Franklin F. Ins. Co. v. Updegraff, 43 Pa. 350; Lycoming Co. M. Ins. Co. v. Schollenberger, 44 Pa. 259; Susq. Mut. F. Ins. Co. v. Cusick, 109 Pa. 157.

*Mr. M. F. Leason* (with him *Mr. J. H. McCain, Mr. E. S. Golden* and *Mr. H. L. Golden*), for the defendant in error:

1. This policy is not a valued policy. The amount mentioned in it as put upon each building and item of property, has no force whatever more than a maximum beyond which the company shall not be liable: see Lycoming Ins. Co. v. Mitchell, 48 Pa. 367. The German Amer. Ins. Co. v. Hocking, 115 Pa. 398 rules the case. All the authorities relied on by the plaintiff were cited in that case, and the court said: "But it will be observed that the policy in suit requires that certain specific matters shall be stated to the company under oath, which by its special provisions are as essential in the ascertainment of the company's liability, when there is but a single subject insured and a total loss, as the particular statement is when there are numerous subjects or the loss partial."

2. There is not a scintilla of evidence of any waiver in this case. The plaintiff endeavored to manufacture a waiver out of his own testimony. When boiled down, it is that the adjuster said, when the appraisers met, that the company would pay the loss as soon as the amount was fixed. This remark misled no one. The plaintiff afterwards prepared and presented formal proofs of loss as required by the policy. As was well said by the court below, his own subsequent conduct was a waiver of his right to set up any such defence. Having presented formal proofs of loss to the company he was bound to abide by his covenant that no payment should be made until ninety days thereafter. Having disregarded this part of his agreement he must abide by the consequence and ought not to complain of the court in holding that his action was prematurely brought.

OPINION, MR. JUSTICE CLARK:

By the terms of this policy the Kittanning Insurance Company insured David Snowden, against loss or damage by fire or lightning, to the amount of one thousand dollars; $400 on his two-story frame building, etc., including the foundation, occupied as a dwelling; $25 on his cupboard and handloom therein contained, etc., for three years from August 28, 1884; the loss and damage to be proved and paid, or made good, according to certain terms and conditions specified.

It was provided that the company should not be liable for a greater sum than two thirds of the actual cash value of the

building burned; that in case of loss or damage, it should be optional with the company to replace, rebuild, or repair within a reasonable time; that persons sustaining loss should give notice thereof in writing, and as soon thereafter as possible deliver a particular account of the loss in writing, signed with their own hands, etc., containing certain specific matters of information as to the origin, extent, and circumstances of the loss, with plans, specifications, etc.; and, until such proofs and declarations are produced, and until such plans and specifications are furnished, the proofs should not be considered complete, nor the loss due until ninety days thereafter. The policy contained other provisions as to the duty of the insured in the case of a partial loss of personal property, but these are of no consequence here. The policy further provided for the selection of appraisers to determine in writing the amount of damage by fire, the award in writing to be conclusive and binding upon the parties, as to the extent and amount of the damage sustained, but "not to affect or waive any other. conditions of the policy."

The fire occurred October 23, 1885; the building and its contents were all consumed; nothing remained but the foundation, which was of stone. On October 26th, Snowden, by letter addressed to the company, gave notice that his house had caught fire and on the 23d was burned, and the result was a total loss. It is contended on part of the defendants, and this is the only defence set up against the plaintiff's recovery, that the suit was prematurely brought; that the loss was not payable "until ninety days after complete proof and adjustment thereof," in accordance with the terms of the policy; that the proofs were not furnished until March 8, 1886, whilst the suit was brought on May 22d, thereafter, seventy-five days only intervening, the proofs which were furnished having in the meantime been withdrawn. On part of the plaintiff, however, it is contended that the furnishing of the proofs was waived by the company; that the proofs which were furnished were, under the agreement of the parties, unnecessary and were therefore withdrawn.

It was certainly competent for the company to waive this provision of their policy: State Ins. Co. v. Todd, 83 Pa. 272; Crawford Co. M. Ins. Co. v. Cochran, 88 Pa. 230; Farmers

Mutual Ins. Co. v. Moyer, 97 Pa. 441. It has always been held competent for insurers to waive performance of a formal condition introduced into a policy solely for their own benefit; such waiver need not be expressed but may be inferred, either from the acts of the insurers evidencing a recognition of their liability, or from their denial of obligation exclusively for other reasons: Buckley v. Garrett, 47 Pa. 204; Ins. Co. v. Taylor, 73 Pa. 343; State Ins. Co. v. Todd, supra.

Was there any evidence of such a waiver of the preliminary proofs in this case? It appears that in November, about the middle of the month, Crawford, the company's agent, was sent out to adjust this claim. He told Snowden the house was insured for more than it was worth, and proposed that Snowden should choose one carpenter and the company another, and " whatever these two carpenters would agree upon the company would pay." This offer, although not agreed to at the time, was afterwards accepted by Snowden in an interview he had in Kittanning with Brown, the superintendent of the company, and Crawford, the company's agent. The agreement was reduced to writing and signed by the parties, and King and Morrow were therein authorized " to appraise at its actual cash value the damage claimed to have been caused by the fire to the property insured." Snowden says the understanding and agreement was that the company would "pay whatever these two appraisers would make;" " they were to pay the money right away;" " as quick as the value was made." The appraisers were sworn, and on February 18, 1886, returned an appraisal or award in which they state, " that after having taken into consideration the age, condition, and location of the premises previous to the fire, and making proper deduction for the walls, materials, and portions of the buildings saved," they appraise and determine the damage to be $300. This adjustment of the loss was completed on February 18, 1886. The suit was not brought for more than ninety days thereafter, and if the proofs of loss were waived the suit was not premature.

Now, if it be true that the company agreed to pay whatever these two appraisers would make, " right away," "as quick as the value was made," and this is not denied either by Brown or Crawford, then certainly there was a waiver of the preliminary proofs. If the company through their special adjusting

agent agreed to pay at once after the adjustment was made, as stated, what was the necessity for preliminary proofs or for plans and specifications? In that case the adjustment of the loss was dependent wholly upon the action of the appraisers. The question of waiver was, therefore, for the jury, and the court erred in not submitting that fact for their consideration. The principle governing this case is, therefore, readily distinguished from that stated in German American Insurance Company v. Hocking, 115 Pa. 398. It was argued here that as the company by the policy were not liable for a greater sum than two thirds of the actual cash value of the building burned, if a recovery could be had in this case at all it would only be for two thirds of the amount fixed by the appraisers. But it will be observed that the appraisement was not of the value of the building; it was of the damage done; and a proper deduction was made for the walls, materials, and portions of the buildings saved. The appraisers did not value the building; they were not selected for that purpose.

> The judgment is reversed, and a venire facias de novo awarded.