WILMS *v.* NEW HAMPSHIRE FIRE INSURANCE CO.

1. APPEAL AND ERROR—INSURANCE—TITLE TO INSURED PROPERTY—STIPULATIONS.

   Where, in an action upon fire insurance policies assigned to plaintiff covering lumber sold to him, the only defect in plaintiff's title relied upon and identified by stipulation signed by defendant's attorneys up to the time the cause was tried was the claimed presence in the lumber of some taken from State land in committing trespass thereon by plaintiff's assignor, this court will refuse to consider any other claimed defect in plaintiff's title.

2. INSURANCE — ASSIGNMENT OF POLICY — CONSENT OF INSURER — NEW CONTRACT—TITLE TO INSURED PROPERTY.

   Where fire insurance policies on lumber were assigned to the buyer with the consent of the insurer, the effect was new contracts of insurance issued to the buyer as owner of the lumber.

3. SAME—ADJUSTMENT—WAIVER.

   An insurance company may investigate the circumstances attending a loss, by an adjuster or other agent, even if the insured is thereby put to some expense or is delayed,

and may have an appraisal of values made, without waiving its rights under the policy.

4. SAME—POWERS OF ADJUSTER—WAIVER.

Having investigated the circumstances of a loss, an adjuster, upon whose powers the insured knows of no limitation, may bind the insurer he represents by his action, and may deny liability and thereby waive the furnishing of proofs of loss and the provision of the policy that suit shall not be begun thereon until 60 days after furnishing proofs of loss.

5. SAME—ADJUSTMENT OF LOSS—CONCLUSIVENESS.

Where the adjuster and the insured reached an oral agreement as to the quantity and value of the destroyed property, evidenced by a schedule of loss, agreed to, and signed by the adjuster, and adopted by the insured in presenting proofs of loss, in the absence of fraud or mistake, the agreement is conclusive upon both the insurer and the insured.

6. SAME—POWERS OF ADJUSTER—NOTICE.

The recital in the blanks for proofs of loss that "It is expressly understood and agreed that the furnishing of this blank to the assured and the preparing of proofs by an adjuster or any agent of the company herein, is not a waiver of any rights of said company," cannot reasonably be construed to be notice that the general power of an adjuster to agree to the amount of the loss is curtailed.

Error to Saginaw; Gage, J. Submitted October 17, 1916. (Docket No. 102.) Decided March 29, 1917. Rehearing denied June 1, 1917.

Assumpsit by William Wilms against the New Hampshire Fire Insurance Company upon three policies of insurance. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Lucking, Helfman, Lucking & Hanlon,* for appellant.

*Humphrey, Grant & Humphrey (William C. Gilbert,* of counsel), for appellee.

OSTRANDER, J. The action is brought to recover upon three policies of insurance, issued by defendant to the Northern Timber Company, covering lumber claimed to have been destroyed by fire June 17, 1913.

194—Mich.—42.

They, with other policies covering the same risk, and which have been·paid, were assigned, before loss, to the plaintiff. At the circuit, a verdict for plaintiff was directed by the court, upon which a judgment for the sum of $4,991.70 was entered November 18, 1915. A new trial, asked for by defendant, was refused.

The policies describe the insured property:

"On lumber (lath and shingles, if any) owned by assured or held in trust or on commission, or sold, but not delivered, piled on the shore of Lake Superior at Perry's Landing, Michigan."

The assignment of each policy was consented to by defendant by indorsement on the policy of the words:

"The New Hampshire Fire Insurance Company hereby consents that the interest of the Northern Timber Company as owner of the property covered by this policy be assigned to William Wilms."

Each policy contains, among other stipulations, the following:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable, pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy."

· Some 2,500,000 feet of lumber, it is claimed, was cut by the Northern Timber Company. Twenty policies of insurance were issued to the Northern Timber

Company by different companies, 16 of which were assigned prior to the fire. With respect to the policies here involved, proofs of loss were made under each of them on the forms of the defendant company, upon each of which, pasted thereto, was a schedule, reading:

Bills of Sale Northern Timber Co. to William Wilms.

| Oct. 21, 1912 | Piles | 1-20 | 235000 |
| Dec. 2, " | " | 21-43 | 276000 |
| " 23, " | " | 44-59 | 178100 |
| Jan. 31, 1913 | " | 1-11-41-43 | 166089 |
| Feb. 17, " | . " | 12-21 | 128640 |
| " 28, " | " | 61-71 | 178120 |
| | | | 1161969 |

Sale price of lumber at Chicago..$16 25 per M
Less loading and cartage........ 3 25     13 00

Loss and Damage......................... $15105 59

[Signed]  W. S. Wright, Adjuster,
Marquette, Mich.

And also a schedule of insurance and apportionment of the claim, reading:

| 1575 | 10- 2-13 | Ætna ................. | $1,500 00 |
| 2279059 | 2-12-13 | Caledonian ............ | 2,000 00 |
| | 3-12 | California ............. | 1,500 00 |
| 19424 | 12- 13 | | |
| 19432 | 2-12-13 14 | " ............. | 1,500 00 |
| 2402815 | 10- 9-12 13 | Franklin ............. | 1,500 00 |
| 213702 | 6-11-13 14 | New Hampshire ........ | 1,000 00 |
| 205772 | 12- 3-12 13 | " " ....... | 1,500 00 |
| 205780 | 2-12-13 14 | " " ....... | 2,000 00 |
| | | | $14,000 00 |

Mr. Wright, the adjuster for defendant, testified, over objection and exception:

"In adjusting this loss of tnis lumber by fire at

Perry's Landing, I acted for the New Hampshire Fire Insurance Company. Mr. Joseph Braden of Chicago acted for Mr. Wilms.

"*Q*. Now, did you, acting for the New Hampshire Fire Insurance Company, with Mr. Braden acting for Mr. Wilms, have any negotiations that culminated in an agreement as to the amount of the loss, and the value of the property destroyed? * * *

"*A*. Yes, sir.

"*Q*. I show you Exhibits N, M, and L, and call your attention to what is known as schedule attached to each one of those schedules, on each of those proofs of loss, purporting to be signed by W. S. Wright, adjuster, and ask you if those were signed by you? * * *

"*A*. Yes, they were.

"*Q*. Are those settlements signed by you, on each of those three proofs of loss, the adjustment made as agreed upon between you and Mr. Braden and the New Hampshire Fire Insurance Company, on their loss? * * *

"*A*. They are. My agreement with Mr. Braden as to the adjustment was verbal. Those written schedules signed by me are in accordance with that verbal agreement. * * *

"*Q*. And are these statements signed by you a memorandum in writing of the amount of property destroyed, and its value, as agreed upon between you and Mr. Braden? * * *

"*A*. They are. * * * I filled out the proofs of loss and mailed them to Mr. Braden at Chicago, to be signed by Mr. William Wilms, or his attorney in fact. They were returned to me executed as you now see them. After I received them, I sent them to Mr. Geo. March."

Defendant paid Mr. Wright for his services. These papers were forwarded, and with respect to each of them, under date September 15, 1913, upon the stationery of the defendant, signed, "George K. March, Special Agent," a letter was written, addressed to plaintiff, acknowledging receipt of "an executed statement relative to policy, etc.," and stating that for

several reasons "we are forced to make objections to said statement, purporting to be proof of loss, and same is held subject to your order." The objections stated were, in substance and effect, that "we have been," or "we are," advised by the commissioner of the land office of Michigan that the State claimed title to a considerable portion of the lumber described in the policy and the purported proof of loss; that on or after January 24, 1913, the Northern Timber Company assigned and set over a portion, if not all, of its assets, real and personal, including the property described in the policy, or the timber from which it is claimed some portion of the lumber in question was cut, to the Chippewa Land & Lumber Company, and possibly to others, without giving notice thereof to the defendant; that from information received "we are forced to the belief that the value and quantity of lumber alleged to have been destroyed by the fire in question are very considerably overstated in said purported proof of loss"; that the Northern Timber Company did not possess full title to the property for which claim was made, and therefore could not convey it. The objection relating to the claimed interference of the Chippewa Land & Lumber Company with the title to the property was abandoned, and need not be again referred to.

Before any suit was instituted, this state of facts existed: Policies had been from time to time issued to the Northern Timber Company as lumber was cut and piled, sales of lumber had been made to the plaintiff, the piles of lumber so sold being marked and identified and paid for in part by plaintiff, written bills of sale describing the same had been made by the Northern Timber Company to plaintiff, to whom, with the consent of the insurer, policies so as above issued were assigned by the Northern Timber Company, a fire had occurred, destroying whatever lumber there was. including that sold to plaintiff, an adjuster rep-

resenting defendant and an agent of the plaintiff had visited the scene of the fire, had conferred and had agreed upon the quantity and value of the plaintiff's lumber destroyed by the fire, formal proofs of loss containing the evidence of the agreement of these agents had been sent to defendant, and defendant had, as above stated, made its objections to the payment of the loss. A suit or suits upon the defendant's policies had been instituted by the plaintiff in Chicago, and, it would seem, a suit (the one at bar) had also been brought in Michigan. Thereafter it was proposed by the attorney for defendant that the Chicago suit be discontinued and the Michigan case tried, and in negotiations relative to such proposed action and for the purpose of ascertaining what questions defendant desired to raise and have determined, if the Michigan case was tried and the Chicago suit abated, the attorney for defendant indicated in writing the issues as follows:

"It is the contention on our part that Mr. Wilms was not guilty of intentional or wilful fraud either in obtaining the policies of insurance or in making the purported proofs of loss.

"Our claim is constructual fraud, based on the fact that the Northern Timber Company's policies were void because of the theft on their part of a portion of this timber, and the fact that they could not pass title to Mr. Wilms. This being true, Mr. Wilms did not have the sole and unconditional title to the property, and hence the false statements, although we admit the innocence of Mr. Wilms, in making same.

"We charge this to reach the title of the property and try out the divisibility of the contract as it is our claim that each policy was a blanket policy on the entire amount of timber.

"We will not stand on technicalities, but eliminate everything possible in order to reach the main points of the case. We will agree that the purported proofs of loss were made out by Mr. Paepcke under proper authority, and we see no necessity of either Mr. Wilms

or Mr. Paepcke appearing in these suits, as such matters we will agree to read into the record. This also applies to all papers made out by Mr. Wright, the adjuster.

"We will further agree that this fire was the occasion of a total loss and that notice was given to each company.

[Signed]    "M. H. Baxter."

The Chicago suit was discontinued, the Michigan suit tried, with the result hereinbefore stated. The special defenses, notice of which was given with defendant's plea, correspond, in substance, with the objections indicated in the letters denying liability.

Defendant, appellant, presents certain propositions which it states as follows: *First,* the title to the insured lumber when destroyed was in the Northern Timber Company; no title ever passed to plaintiff. *Second,* the fact that Mr. Wright helped the plaintiff prepare the proofs of loss did not bind the company as to quantity or value of lumber destroyed; this did not constitute an agreement by defendant to pay the amount stated in the proofs. *Third,* an adjustment may be rescinded for fraud. *Fourth,* the instruction that there was no evidence showing that "trespass lumber" was mixed with the lumber sold to plaintiff was erroneous. *Fifth,* there was misrepresentation in the procurement of the policies which rendered them void when issued. *Sixth,* the case should have been submitted to the jury.

1. Appellant's first proposition is based upon the contract between plaintiff and the Northern Timber Company for the purchase and sale of the lumber, it being contended that according thereto title could not pass until the lumber was inspected and measured, the purchase price determined, the quantity of each grade (two) of lumber ascertained, until acceptance by plaintiff, until the lumber had been loaded and delivered in Chicago. There is a sufficient reason for declining to

discuss this proposition in this opinion. Although in the notice of special defenses given with defendant's plea it is averred that plaintiff was not owner of the property covered by the policies when they were assigned to him, or when the loss occurred, no such unqualified fact was asserted in denying liability, and it is evident that the only fact regarded as affecting plaintiff's title to the time the cause was tried was the one that the Northern Timber Company did not have a title to convey to plaintiff. Its title was questioned because of the claimed presence in the lumber of some taken from State land in committing a trespass thereon. This conclusion is supported by the language employed in denying liability and as well by the statement of Mr. Baxter, attorney for defendant, made in writing, for the purpose of identifying and of making certain, for the benefit of the attorneys for plaintiff, the issue desired to be tried.

Further than this, the policies sued upon were assigned to the plaintiff, and the defendant consented to the making of such assignments "transferring the interest of the Northern Timber Company as owner of the property" covered by the policies. The effect was new contracts of insurance issued to plaintiff, as owner. And the assignments and the stipulation above set out are consistent only with the idea that plaintiff's title to the lumber claimed by him was regarded as infirm only because the title of his vendor was infirm.

2. It was, and is, the contention of plaintiff, that, upon the subject of the extent of loss and value of property destroyed, the adjustment bound both parties, in the absence of fraud or mistake, and no fraud or mistake being alleged in the denial of liability, or in the notice given with the plea, the manner in which the conclusions of the adjuster were reached and upon what evidence was immaterial. This contention the court sustained. It is appellant's contention that Mr.

Wright had no authority to so bind the defendant upon the subject of the quantity and value of the property destroyed.

It is undoubtedly true that an insurance company may investigate the circumstances attending a loss, by an adjuster or other agent, even if the insured is thereby put to some expense or is delayed and may have an appraisal of values made, without waiving its rights under the policy. *Briggs* v. *Insurance Co.,* 65 Mich. 52 (31 N. W. 616) ; *Richards* v. *Insurance Co.,* 83 Mich. 508 (47 N. W. 350, 21 Am. St. Rep. 611). But it is also true that, having investigated the circumstances of a loss, an adjuster upon whose powers the insured knows of no limitation may go further and bind the company he represents by his action. He may, for the company, deny liability and thereby waive the furnishing of proofs of loss and the provision of the policy that suit shall not be begun thereon until 60 days after furnishing of proofs of loss. *Popa* v. *Insurance Co.,* 192 Mich. 237 (158 N. W. 945) ; *Fisk* v. *Fire Association,* 192 Mich. 243 (158 N. W. 947).

In *Lancashire Ins. Co.* v. *Barnard,* 111 Fed. 702 (49 C. C. A. 559), an adjuster elected not to rebuild a building injured by fire and to pay the damages, and his power to do so was denied by the insurer. It was said:

"But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid; and hence he necessarily has the authority to determine whether

it shall be paid in money, or by the reconstruction of the injured building, and the power to exercise the option of the company in that behalf."

The reasoning of the court in the cases last cited applies in the case at bar and in any case where, no limitations upon the powers of the adjuster being disclosed, he agrees with the insured as to the amount of the loss and the liability of the insurer. The contracts of insurance here involved contemplate a settlement and an adjustment of the loss, and provide for an appraisement of the loss sustained by the insured if an agreement cannot be reached by the parties. There is uncontradicted evidence of an agreement of the defendant's adjuster and the representative of the plaintiff as to the quantity and value of the destroyed property. In *Moloney* v. *Insurance Co.*, 168 Mich. 269 275, 276 (134 N. W. 6), cited by defendant, it was expressly determined that the testimony did not evidence an admission and settlement of liability. The agreement in the case at bar was not formally reduced to writing and signed by both parties, but it was arrived at, and the plaintiff in presenting the proofs of loss, with the schedule thereof, actually agreed to, signed by the adjuster, adopted and approved the schedule and the facts recited therein. In the absence of fraud or mistake, this ought to conclude both parties.

It is said by defendant that in the proofs of loss themselves is found a limitation upon the powers of the adjuster, they containing the recital:

"It is expressly understood and agreed, that the furnishing of this blank to the assured and the preparing of proofs by an adjuster or any agent of the company herein, is not a waiver of any rights of said company."

But the adjuster did more than the things here recited. Nor can the provision be reasonably construed to be notice that the general power of an ad-

juster to agree to the amount of the loss is curtailed.

It should be stated further that, although the court ruled, as is hereinbefore set out, that the agreement as to quantity and value was conclusive, the plaintiff did, by undisputed evidence, make out a loss of lumber, the value of which exceeded the amount of the insurance. It was *undisputed* evidence, although defendant introduced testimony in an effort to prove that so much lumber of the quality could not have been secured from certain lands from which logs from which the lumber was made were taken. In my opinion, this testimony, which need not be set out here, was of such a nature that the court was warranted in disregarding it upon the question of the quantity of lumber destroyed by the fire.

3. It is said that the adjustment—settlement—made by the adjuster may be rescinded for fraud. This contention is not disputed. But it is not claimed that Mr. Wright acted fraudulently, or that plaintiff had any fraudulent purpose. It is said, however, that Mr. Wright acted upon information which was in fact untrue, and that defendant was prepared to prove that there was not to exceed one-fifth the claimed amount of lumber destroyed. For this latter statement I find no support in the record. It has been already stated that testimony was introduced upon the subject of the quantity of lumber which was cut and piled by the Northern Timber Company and set apart, in piles, for plaintiff. The opening statement of counsel for defendant was that evidence would be introduced to show (in substance and effect) that there was not half the lumber, claimed to have been destroyed, there; that Mr. Wright acted upon misinformation given by the assured, or by persons in privity with him; that a considerable quantity of lumber of certain grades was made from logs taken, without authority, from State lands and mixed with other lumber; that the fire oc-

curred a few days before State trespass agents were expected to present themselves; that the agent who issued the policies did so upon statements of the representative of the Northern Timber Company that the lumber covered was all cut from its lands; that it was impossible for plaintiff to have lost so much lumber, for the reason that it never grew upon descriptions of land which plaintiff claimed it came from.

Defendant established the facts:

*First,* that agents of the State estimated that the Northern Timber Company had cut from State land without authority 145,000 feet of logs; and, *second,* that the sum of $1,450 was paid to the State, after the fire, in settlement of the alleged trespass.

The testimony did not tend to prove that plaintiff had any knowledge of the first fact, or that any of this lumber was mixed with the lumber piled and set apart as plaintiff's lumber. Indeed, it is doubtful if anything but conjecture supports the idea that any considerable quantity of lumber was in fact cut from timber belonging to the State, or that the Northern Timber Company did not cut, where it had the right to cut, more lumber than was claimed to have been insured and destroyed by the fire. I do not regard further discussion of the subject as material, although there is satisfaction in knowing that the application of proper rules of law does not in fact result in any injustice to defendant.

4, 5, 6. What has been said disposes, practically, of all remaining contentions. The case for the plaintiff, supported by undisputable evidence, is that the policies of insurance were originally properly issued, and, as lumber was set apart for plaintiff in piles marked with his name, the policies in suit, and others, were assigned to him, with the written consent of the insurers, thus making a new contract between plaintiff and the insurers. Plaintiff was innocent of any fraud or mis-

conduct in the matter, and lumber for which he had paid, and had agreed to pay, in value exceeding the insurance thereon, was totally destroyed by fire. The insurer and the insured set about ascertaining the facts and the quantity and value of insured property which had been destroyed, and reached an agreement. Of this agreement, made by its agent, defendant had notice as early as July 11, 1913. It was September 15, 1913, that it notified plaintiff of its reasons for not paying his demand and for denying liability.

It is obvious that if no agreement as to the quantity and value of the insured property had been reached, pursuant to the contract, a resort to appraisers would have followed. It is equally obvious, and has been already commented upon, that the sole question regarded by the attorney for defendant as debatable was the alleged infirmity of title to the property arising out of the claim that the policies when issued were blanket policies, remained so, and the lumber originally covered by them had been, a part of it, secured by a trespass upon State lands. In view of the consent of the insurer to the assignment of the policies in suit to plaintiff, the segregation of his lumber, the agreement which was reached as to the quantity and value of lumber destroyed, the issue actually presented is a simple one and rightly decided by the trial court.

The judgment is affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.