Argued February 18; affirmed May 26; rehearing denied
June 16, 1931.

# WESTERN LOGGERS' MACHINERY CO. *v.*
# NATIONAL UNION FIRE INS. CO.
### (299 P. 311)

*Randall S. Jones,* of Portland (E. L. McDougal, of Portland, on the brief), for appellant.

*McDannell Brown,* of Portland (C. M. Idleman, of Portland, on the brief), for respondent.

BEAN, C. J. This is an action on a contract to pay the cost of repairing a damaged tractor insured by the defendant company. The main allegations of the complaint upon which the action is based, in addition to the allegations of the corporate character of plaintiff and defendant, are that about February 7, 1928, the defendant, in consideration of the payment of the usual premium, entered into a contract of insurance with plaintiff, whereby it insured the plaintiff against any and all loss or damage that plaintiff might sustain to certain caterpillar tractors owned by it through fire and collision; that about December 1, 1928, while the policy was in full force, one of plaintiff's caterpillars in the course of transportation, suffered an injury and damage through collision; that plaintiff thereupon immediately notified the defendant, who caused its adjuster to make an investigation of the damage to the tractor; that the adjuster made an estimate of the damage and instructed and directed the plaintiff to have the same repaired, and agreed with plaintiff that defendant would pay the plaintiff for such repairs in settlement of its liability under the insurance policy; that the repairs were made at an expense of $1,946.48, which was the reasonable value; that the invoices for

the repairs were presented to the defendant and defendant refused to pay the same. The answer consists of denials of the allegations of the complaint.

It appears that plaintiff is an Oregon corporation with its principal place of business in Portland, Oregon, and was engaged in selling logging machinery and caterpillar tractors of all kinds. In January or February, 1928, plaintiff applied to its Portland insurance brokers, Rogers, Hart & Banks, to obtain insurance coverage on the equipment that plaintiff was selling, and the brokers obtained the policy for plaintiff from the defendant. After this policy was issued the plaintiff sold a tractor to William Carmichael on a conditional sales contract. The defendant was notified of the sale and the proper endorsement was made on the policy.

During the latter part of November, 1928, while the tractor was loaded on a truck and trailer and in transit on the highway it was damaged in an attempt by the driver to pass under a bridge which was too low to allow the tractor to pass. John H. McCaffery was at this time the adjuster of defendant, and in response to notice of the accident he went to the shop in Seattle to look at the tractor. Mr. Turney, president of the plaintiff company, went to Seattle and the adjuster obtained estimates of the cost of repairing the tractor. He was assured that the cost would not be over $2,000, and authorized the plaintiff to go ahead and have the repairs made and to send in the invoices and as soon as the invoices were received the plaintiff would receive a check for the amount. Mr. Turney, who went to Seattle to settle the matter, returned to Portland, and all the testimony indicates that the matter was fully adjusted and settled, the repairs costing the amount mentioned, which plaintiff paid.

The main contention in this case is the authority of the adjuster to make the adjustment and settlement. The record shows that the defendant insurance company had an office and general manager for the Northwest at Seattle, Washington, and nearly all of the losses occurring in Washington and Oregon were settled and adjusted through the Seattle office, and Mr. McCaffery, the adjuster, worked out from that office. The adjuster had a copy of the insurance policy.

■ An officer or agent generally or specially authorized by the insurer to act for him in the matter may bind the insurer by adjusting with the insured the amounts to be paid for the loss under the terms of the policy of the insurance company. Where an insurance company knows that a person is acting as its adjuster in fixing a loss, and fails to repudiate its acts until after the amount has been fixed and determined, it cannot afterward question his authority: 26 C. J. 412, § 531, and numerous authorities there cited.

■ Where an adjustment has been fully completed and agreed upon by both parties, a new contract arises to pay the amount agreed upon as a result of the adjustment. And the action for the recovery for the adjusted loss is a suit, not upon the policy, but upon such new contract: 26 C. J. 413, § 532.

■ An adjuster is ordinarily a special agent for the person or company for whom he acts, and his authority is prima facie co-extensive with the business intrusted to him.

"Having investigated the circumstances of the loss, an adjuster, upon whose powers the assured knows of no limitation, may go forth and settle the loss, and bind the insurer he represents by his action. He may determine the amount of the loss, and how, when and

where it shall be paid. And he may exercise the insurer's option to pay the loss or to reconstruct or repair the building injured'': 26 C. J. 413, § 533, citing *Wilms v. New Hampshire F. Ins. Co.*, 194 Mich. 656 (161 N. W. 940) ; *Booth, etc., Lumber Co. v. Caledonia Ins. Co.*, 196 Mich. 134 (162 N. W. 955).

■ Settlements between an insurer and an insured have all the elements of a contract, and are as incapable of rescission as any other contract: 26 C. J., 415 § 537.

In 7 Cooley's Briefs on Insurance, (2d Ed.) 6118, we read thus:

"The company will be bound by an adjustment or compromise by any officer or agent whom it sends to the insured to represent it in the adjustment of the loss. [Citing numerous authorities.] So, also, where the company knows that a person is acting as its adjuster in fixing a loss, and fails to repudiate his acts until after the amount has been fixed and determined, it cannot afterwards question his authority: *Schlesinger v. Columbian Fire Ins. Co.*, 56 N. Y. S. 37 (37 App. Div. 531)."

The rule is different as to a local agent lacking authority.

■ The insurance company's offices at Seattle were thoroughly informed in regard to the adjustment and knew of the progress of the same.

In *Lancashire Ins. Co. v. Barnard*, 111 Fed. 702 (49 C. C. A. 559), we quote the language of Circuit Judge Sanborn, who is a very reliable authority, as follows:

"But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is

always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid; and hence he necessarily has the authority to determine whether it shall be paid in money or by the reconstruction of the injured building, and the power to exercise the option of the company in that behalf: *Snowden v. Insurance Co.*, 122 Pa. 502, 510 (16 Atl. 22); *Platt v. Insurance Co.*, 153 Ill. 113, 122 (38 N. E. 580, 26 L. R. A. 853, 46 Am. St. Rep. 877).''

"Adjust" means "to settle or arrange; to free from differences or discrepancies; to bring to a satisfactory state, so that parties are agreed; as, * * * to adjust the amount of a loss by fire." Webster's New International Dictionary, 1926.

In 1 C. J., p. 1237, quoted with approval in *Roemhild v. Home Insurance Co.*, 130 Or. 50, 59 (278 P. 87), an adjuster is defined as follows:

"One whose business it is to ascertain the loss and agree with the assured on the settlement; one who determines the amount of a claim, as a claim against an insurance company; the person who makes the adjustment or settlement."

■ The direct evidence of plaintiff and his witnesses is that Mr. McCaffery, the adjuster on behalf of the company, promised to pay for the repairs to the tractor. If the matter had not been adjusted and settled, the ordinary course, as we understand it, would have been for the adjuster and assured to have prepared a proof of loss. The adjuster could waive proof of loss, as he did. He investigated all of the circumstances and was apparently satisfied with such

proof. The testimony clearly shows that the matter was all settled and agreed upon. The adjuster did not so relate the transaction in his testimony. The company does not question but what Mr. McCaffery, who was its regular salaried adjuster, had all the authority usually reposed in an adjuster. It was the general arrangement that the matter would be settled in the Northwest and not sent back to the home office in Pennsylvania.

■ Counsel for the defendant makes some criticism of plaintiff for the reason that plaintiff did not introduce the policy in evidence. The defendant's adjuster had a copy of the policy. During the trial of the case counsel for defendant requested plaintiff to produce the original. Afterwards he said: "Because of the way the case has gone, I don't think that contract is necessary, so I will not insist on that." Realizing that the action was founded on the contract for payment of damages, the defendant's counsel seemed to be of the same opinion as counsel for plaintiff, and it is too late to raise the question in regard to the lack of the introduction of the policy in evidence. The defendant's witnesses testified without objection as to the conditions of the policy.

It seems to be agreed that the caterpillar tractor was covered by insurance while in transit. At the time of the accident, as we have noticed, it was being transported from one place to another in Washington, on a truck and trailer. It was damaged while in transit by striking a bridge over the highway which was too low to allow the tractor to pass.

Some complaint is made that Mr. Carmichael who purchased the tractor was at times engaged in the logging business. We fail to see what effect that would have in the transportation of the tractor upon the

truck and trailer. The defendant, by its agents and its home office, led plaintiff to believe that the tractor in question was covered by the insurance. They were entirely satisfied, so long as the premium was coming in, although it was received from the "Western Loggers Machinery Company" which name indicates its business. It does not signify that they are undertakers, but rather that they dealt in logging machinery.

Mr. McCaffery, the adjuster, had the apparent authority to adjust the loss in the manner in which he did. The testimony also tends to show that he had actual authority. There is no pleading on the part of defendant, except denials of the allegations of the complaint. The cause was tried by the court without the intervention of a jury, and the allegations of the complaint are thoroughly sustained by the testimony.

The judgment of the circuit court is affirmed.

ROSSMAN and KELLY, JJ., concur.

RAND, J., concurs in the result.