HEMMER-MILLER DEVELOPMENT CO., Respondent, v. HUDSON INSURANCE CO. OF NEW YORK, Appellant.

(256 N. W. 798.)

(File No. 7516.   Opinion filed October 17, 1934.)

*Paul E. Martin* and *W. P. Rooney,* both of Hot Springs, for Appellant.

*E. B. Adams* and *H. M. Lewis,* both of Hot Springs, for Respondent.

ROBERTS, P. J.   Plaintiff is the insured in a hail insurance policy issued by defendant insurance company.   On an appeal taken by the defendant, a judgment entered for the plaintiff was reversed by the decision of this court reported in 59 S. D. 129, 238 N. W. 342, and the cause was remanded for new trial.   The policy was construed to be open, and not valued, preventing recovery thereon without proving the actual value of crops damaged.

Thereafter, the trial court granted a motion made before trial for leave to file an amended complaint, based not upon the policy of insurance, but on an agreement of settlement alleged to have been made between the parties. The first assignment is that the trial court erred in permitting such amendment. The contention of counsel is that plaintiff having brought an action upon the policy and having attempted to establish damages by offering proof of percentage of loss under the assumption that the policy was a valued policy cannot now recover upon an agreement of settlement. Permitting or denying amendments to be made to pleadings is largely within the trial court's discretion. Cornell v. Johnson, 59 S. D. 617, 241 N. W. 740. An appeal and a reversal of a case does not preclude amendments to the original complaint substituting an entirely different theory of the case from that upon which the case was first submitted. Tuthill v. Sherman, 39 S. D. 464, 165 N. W. 4. The motion of the plaintiff to amend was before trial, and the defendant was given opportunity and did in fact interpose an answer to the amended portions of the complaint. The trial court did not err in granting the amendment.

Plaintiff contends that the agreement on which this action is brought was made with the plaintiff through an agent of an insurance adjustment agency which was employed by the defendant company to adjust losses. Defendant company denied that the adjuster ever made an agreement to pay a named sum in settlement of plaintiff's loss, and if the adjuster did make such an agreement it was not binding on the defendant for the reason that the adjuster had no authority to make such an agreement for the company.

The evidence shows that Hedwall-Sundberg Company was an agent of the defendant company for the state of South Dakota with authority to adjust and settle losses. This company arranged with George M. Steele for an adjustment of the loss. A letter written by the company to Steele reads:

"We have consulted with Jake Nelson regarding having you make this adjustment for the reason first, that it is a large policy, second, that we have confidence in your ability and third, which is confidential, that one half of liability is re-insured in the Continental. You will however, be authorized to represent yourself to the agent and policy holder, so far as your judgment is concerned,

as the agent for the Hedwall-Sundberg Company. Please have the loss notice signed by the Claimant, as well as the proof.

"As your company will ultimately pay one-half of loss, we are looking to you to keep the allowance down to the actual amount of damage done by hail only.

"Please return papers to us when the adjustment is completed together with statement of expenses. The assured has wired us to send an Adjuster immediately, but it will be satisfactory with us for you to make the adjustment at a time when in your judgment it will be done to the best advantage."

There was attached to the letter a blank which was used by the adjuster and is Exhibit 5 in the record. This exhibit, under the heading "Hail Adjustment Proof of Loss," contains this statement: "Storm which occurred on the 26th day of July 1926, about the o'clock —— M., loss was sustained to the growing crops described in your policy No. 10059 insuring the following described crops from the hour of 12 o'clock Noon M., on the 12th day of June, 1926. On all int. in 140 acres of Alfalfa in Sec. 19 T 11 R. 4 not to exceed $14 per acre. Amt. $1960. * * * Actual loss or damage by Hail under the terms of said policy has been sustained as follows: 100% of $1960 on 140 acres of Alfalfa Sec. 19 T. 11 R. 4 at $14 (1-3) per acre. $653.33. * * * Net amount claimed for last storm $7,635.72. * * * I hereby agree to accept under the above described policy said net amount claimed, in full payment, compromise and satisfaction for loss and damage as aforesaid and further agree that said amount covers in full all loss and damage sustained previous to this date."

Following the signature of the plaintiff, the exhibit contains this statement signed by the adjuster: "I hereby certify that I have made a careful examination of the above insured grain and believe that the amount claimed herein is just and fair and no more than assured is entitled to receive."

John G. Hemmer, president of the plaintiff company, testified that he and Lou O' Connell were present when Steele appeared on the premises and made an adjustment of the loss; and that Steele agreed that the defendant company would pay to the plaintiff the amount stated in the proof of loss, Exhibit 5. Steele testified that he prepared the proof of loss; that he had no authority to make

,agreements of settlement for defendant; and that he made no promise or agreement that the defendant would pay plaintiff the amount of the adjustment.

Though there is conflict in the evidence, yet we are of the view that there was evidence sufficient to justify the jury in finding that a promise was made by the adjuster to pay the claim. It is not contended that Exhibit 5 in itself constituted a promise on the part of the defendant company to make payment, or that where a loss has occurred and the insured and the adjuster agree upon the amount of the loss, the law will imply a promise to pay. But it is claimed by the plaintiff that the adjuster promised to pay the amount of the adjustment. It does not appear from the record that Steele had express or specific authority to make a settlement. Without proof of such authority, the trial court in his instructions to the jury seems to have assumed that authority to settle came within the scope of the authorization to adjust the loss. This presents the principal contention. May an assured, having no notice either actual or constructive to the contrary, assume that the agent who has been directed by the insurer to make an adjustment and held out to the insured as an agent possessing the powers of an adjuster bind the insurer to the terms of an agreement of settlement?

Where insured relies upon the act of insurer's agent, the insured must show either that the agent had authority to act or that insurer with knowledge of the facts ratified the act of the agent. Brooks v. Fidelity & Deposit Co., 53 S. D. 275, 220 N. W. 521. But where the authority of an admitted agent is in issue, his authority may be shown in a given case by the nature of the business or employment in which he is engaged. An adjuster is a special agent and his authority is prima facie coextensive with the business entrusted to him.

The word "adjuster" is defined as follows: "One whose business it is to ascertain the loss and agree with the assured on the settlement; one who determines the amount of a claim, as a claim against an insurance company; the person who makes the adjustment or settlement." 1 C. J. 1237.

In 1 Words and Phrases, First Series, p. 195, it is said: "An adjuster is a person who makes any adjustment or settlement, so

that an insurance adjuster would be empowered and authorized to adjust and settle a loss, and his authority would be sufficient to enable him to take any step which he deemed necessary or proper to facilitate an adjustment; hence a declaration that the company will not pay the claim is binding on the company." Citing Flaherty v. Continental Ins. Co., 20 App. Div. 275, 46 N. Y. S. 934.

In Lancashire Ins. Co. v. Barnard (C. C. A.) 111 F. 702, the authority of an adjuster to elect not to rebuild a building injured by fire was denied by the insurer. We quote from the language of Judge Sanborn in that case: "But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid; and hence he necessarily has the authority to determine whether it shall be paid in money or by the reconstruction of the injured building, and the power to exercise the option of the company in that behalf. Snowden v. Insurance Co., 122 Pa. 502, 510, 16 A. 22; Platt v. Insurance Co., 153 Ill. 113, 122, 38 N. E. 580, 26 L. R. A. 853, 46 Am. St. Rep. 877."

In Commonwealth Ins. Co. v. Soloman, 2 W. W. Harr. (32 Del.) 98, 119 A. 850, the insurer, as in the instant case, contended that the adjuster had no authority to make an agreement of settlement. It did not appear from the evidence that express authority to settle had been conferred upon the adjuster. The court said: "If an insurance adjuster comes as an agent duly accredited to adjust a loss, we regard it as highly unreasonable that the insuring company should be permitted to later say that the authority which its adjuster had was more limited than the words expressing it would naturally indicate, and that when he was given power to adjust the loss he was authorized not in any event to settle it, but at the most only to appraise its extent, measured in dollars. This, we say, would be highly unreasonable. If the insurance company does not wish its adjuster to possess the full authority which power 'to adjust a loss' would naturally indicate, it can very easily

protect itself by informing the assured to what extent the adjuster's authority goes. If it does not do so, but sends the adjuster to the insured with authority to adjust the loss, then it is bound to the full extent that the natural purport of the language describing the agent's authority would indicate. If the adjuster, in that state of facts, goes so far as to settle the liability and agree to its payment, his principal is bound by his acts."

To the same general effect are Wilms v. N. H. Fire Ins. Co., 194 Mich. 656, 161 N. W. 940; Miller v. Consol. P. & F. M. Ins. Co., 113 Iowa 211, 84 N. W. 1049; McCollum v. Liverpool, etc., Ins. Co., 67 Mo. App. 66; Western Loggers' Machinery Co v. Nat. Union Fire Ins. Co., 136 Or. 549, 299 P. 311; Cal. Ins. Co. v. Gracey, 15 Colo. 70, 24 P. 577, 22 Am. St. Rep. 376.

In Bond v. National Fire Ins. Co., 77 W. Va. 736, 88 S. E. 389, it was held that the authority of an adjuster is usually limited to the ascertainment and adjustment of the loss and in the absence of some evidence as to his authority to settle a promise to pay the adjudged claim is not binding on the insurer. In support of this view the court observed that "An adjustment of the amount of the loss, and an agreement to pay the amount as adjusted are two distinct and independent things. * * * Usually and very naturally the first step to be taken in the settlement of a loss by fire, of the property covered by the policy of insurance, is to determine the amount of the loss. As we have already seen, the actual loss sustained by the insured and the liability of the insurer for that loss are quite different things. The loss will be measured by the value of the property destroyed by the fire, covered by the policy, and yet there may be no liability on the part of the insurer, for obvious reasons. This will depend largely on the contract of the parties as expressed in the policy, and the observance or breach of the covenants and conditions of the contract. When the adjustment, or proof of loss, is agreed upon, the first step in the settlement is accomplished, and in the absence of mistake, fraud, or misrepresentation, it must stand as the amount to be paid, if anything; but this will not estop the insurer from denying its liability for the loss. The amount of loss will thus be fixed, but not the liability of the insurer. But it is said by the plaintiff that the company promised to pay the amount agreed upon as the loss. The only evidence of this is the alleged promise of Horkheimer, to which it is replied

that Horkheimer was not authorized to make the promise, and it does not appear that if he made it (which he denies), that it was ratified by the defendant."

We find some conflict in the authorities, but with the prevailing and better reasoned cases holding that an adjuster upon whose powers the insured knows of no limitation may make an agreement binding upon the insurer to settle, it is our opinion that such principle stated in the prevailing decisions should be applied to this controversy.

It is further contended that plaintiff acted fraudulently in stating to the adjuster the contents of a letter which varied the terms of the policy; that the adjuster acted upon information which was in fact untrue. Steele testified that the information given by the insured was that he had a letter from the defendant company permitting him to insure for the amount of $14 per acre with defendant insurer and $10 with the state. Hemmer denied he made such representations. It is doubtful if anything but conjecture supports the contention of defendant. The adjuster had before him the policy of insurance, testified indefinitely concerning the representations as to the contents of the letter, and made no report to the company that he made the adjustments on representations of the insured. The evidence was clearly sufficient upon this issue to sustain the verdict for the plaintiff.

The judgment and order appealed from are affirmed.

All the Judges concur.