**Sandra Riddle ADAM, Plaintiff and Appellant,**

**v.**

**William H. ADAM, Defendant and Respondent.**

**No. 11823.**

Supreme Court of South Dakota.

Argued Feb. 16, 1977.

Decided May 26, 1977.

Rehearing Denied July 6, 1977.

Richards & Richards, Deadwood, for plaintiff and appellant.

Richards & Hood, Spearfish, for defendant and respondent.

MORGAN, Justice.

This divorce action was commenced in September, 1973, by service of a summons and an unverified complaint on the defendant and which complaint alleged generally the marriage of the parties, the birth of a child to the marriage, and acts of extreme cruelty committed by the defendant. Plaintiff prayed for relief in the usual form for a decree of divorce, custody, care and control of the minor child subject to rights of visitation, equitable division of the property and attorney's fees. Defendant's answer admitted the marriage and the birth of the child as issue of the marriage but denied the allegations regarding cruelty. The defendant counterclaimed alleging the marriage, the birth of the child to the marriage and the extreme cruelty on the part of the plaintiff and likewise prayed for a de-

cree of divorce, custody of the child and an equitable division of the property. To this counterclaim the plaintiff's reply was a general denial with specific denial of any acts of cruelty.

From the outset each of the parties sought the temporary custody and control of the minor child and at the behest of the defendant the court on October 9, 1973, entered an order directing the plaintiff to show cause, after the receipt of an investigative report from the Division of Child (sic) Welfare, why the defendant should not be granted the custody and control of the child. The order directed that in the meantime both plaintiff and defendant were restrained from removing the child from the jurisdiction of the court. This order was never served on the plaintiff although her counsel advised her not to remove the child from the jurisdiction of the court. On October 10, 1973, the court entered an order directing the Division of Social (sic) Welfare to make an investigative report bearing on the relative merits of the parties' claims for custody. Subsequent to this order and approximately two months after commencement of the action the plaintiff made application to the court for an order to show cause why the defendant shouldn't pay reasonable support for the plaintiff and the minor child of the parties. The show cause hearing set for determining the right to support was apparently never held. At this point, in December, 1973, counsel for the plaintiff filed a notice of withdrawal due to plaintiff's failure to cooperate. A copy of the notice of withdrawal was served on the court and on counsel for the defendant but it does not appear that it was ever served on the plaintiff.

In late January, 1974, the defendant made a further application to the court for temporary custody alleging that the plaintiff had removed the minor child from the jurisdiction of the court and had not cooperated in granting visitation rights, all in violation of the October 9 order of the court. He further requested that the court declare the plaintiff in contempt and the court on January 9, 1974, entered an ex

parte order finding the plaintiff in contempt of court for violation of the court's "meantime" order, although no findings of fact or conclusions of law were made and there is no evidence whatever in the record that the October 9 order had ever been served on her. The contempt order went on to grant temporary custody to the defendant pending final determination of the matter. The January 28 order was served on the plaintiff some month and a half later, but she apparently refused to deliver the custody of the child to the defendant or to tell the defendant or the sheriff's deputy the child's whereabouts and the defendant applied for a further order declaring the plaintiff in contempt and the issuance of a bench warrant. The record does not include either the order declaring the plaintiff in contempt nor a bench warrant, nor does it contain findings of fact and conclusions of law to support a contempt order. Before anything further could be done the plaintiff again fled the jurisdiction taking the minor child with her and nothing further was heard from her for some considerable period of time.

In August, 1974, the defendant applied for and received from the court an order for trial although the order is not a matter of record. An attempt was made to serve this on the plaintiff in South Carolina. Two subsequent trial dates were set by the court, the final date being set for the 28th day of February, 1975, and as to that order, which is mistakenly denominated a notice, the court upon proper application granted further leave to serve the same by publication and mailing.

At the time and place set for the trial, counsel for the defendant filed an affidavit for default judgment. The defendant was sworn and testified briefly as to the marriage, the birth of the minor child of the marriage, the misconduct of the plaintiff that constituted extreme cruelty, and his care and maintenance of the minor child before the plaintiff had removed him from the jurisdiction. The property accumulated by the parties was mentioned in passing. Apparently, the only division that had been made up to that point was that the plaintiff had taken one of two vehicles with her when she left.

The court entered its findings of fact and conclusions of law and granted the defendant a decree of divorce. The issues decided by the court in these findings, conclusions and decree were that there had been a valid marriage and that one child had been born as an issue thereof (both of which issues were virtually undisputed in the pleadings); the court further decided the issue of grounds for divorce in favor of the defendant. However, with respect to the custody of the minor child, while the court found that the defendant was a fit and proper person to have the care, custody and control of the minor child, Conclusion of Law No. III awarded the custody to the defendant *pending further order of this court and proper appearance by the plaintiff together with the minor child before this court.* (Emphasis supplied.) The decree contained identical language. The court likewise, while finding that during the course of their marriage the parties had acquired certain items of real and personal property, entered Conclusion of Law No. IV awarding the property to the defendant *pending proper appearance and application before this court by the plaintiff.* (Emphasis supplied.) Property division was not specifically mentioned in the decree but the findings of fact and conclusions of law were incorporated in the decree by reference.

The plaintiff and the minor child were ultimately found residing in the State of Wyoming, cohabiting with a man who also had a son. As a result of a habeas corpus proceedings in Wyoming, the Wyoming Welfare Department took custody of the child and pursuant to application by the defendant for a court order turned the custody over to the South Dakota authorities. The court order entered by a second circuit judge, the first judge having retired, granted temporary custody to the Department of Social Services "pending further hearing on the matter to determine permanent custody."

Thereafter each of the parties, by affidavit, made application to the court for temporary custody and defendant applied for a show cause order "why the prior order of this court in divorce decree entered February 28, 1975, granting custody of the parties' minor child in the defendant, should not be made permanent." The plaintiff applied to the court for an order to purge herself of contempt of court, to amend paragraph three of her complaint to allege the nonpaternity of the defendant as to the minor child of the parties, to require group blood tests, for temporary custody of the minor child and for attorney's fees. Counsel for the plaintiff also filed an affidavit applying for an order finding change of circumstances. All of these applications were made to and the orders to show cause thereon were entered by a third circuit judge who set a combined hearing date on October 9, 1975.

At a conference with counsel for both parties prior to the combined hearings and on motion of counsel for the defendant the trial judge elected to treat the determination of the custody question as set out in the findings and conclusions of law and the decree of February 28, 1975, as a final disposition and by order dated October 7, 1975, limited the plaintiff's testimony to the issue of change of circumstances subsequent to February 28, 1975. She was prohibited from inquiry into facts prior to that date and prohibited from inquiry into the paternity of the minor child. A further prehearing order dated October 8, 1975 arising out of the conference denied the plaintiff permission to amend paragraph three of her complaint, denied her request for blood grouping tests, found the property division portion of the decree of divorce a final judgment and took under advisement the question of allowing attorney's fees.

After a protracted hearing begun on October 9 and continued on October 15 the trial judge in his memorandum decision of October 24, 1975, found that no change of circumstances had occurred and went on to state that it will therefore be the decision of this court that the custody remain with the defendant. The order entered by the court on the same date however, stated: "Custody of William Lee Adam is hereby awarded to the defendant, William H. Adam." The decision and the order further found that the plaintiff should have visitation rights during school vacation periods and detailed these. The order further denied the attorney's fees and found that the plaintiff could purge herself from the previous order of contempt upon full compliance with the terms and provisions of this order and the full cooperation with the decision of the court.

Apparently at the prehearing conference it was noted that the decree of divorce had never been served on the plaintiff and she and her counsel of record admitted service of the same as of October 27, 1975, thus making her appeal at this time from a February 28, 1974 decree timely.

Almost before the ink was dry on the October 24 order the plaintiff was back in court asking for a change in the visitation rights and the defendant was contesting it. Early in December defendant applied to the court for termination of the plaintiff's visitation rights alleging that some two weeks earlier she had entered his home in the dead of night and removed the child and his clothing. She apparently had second thoughts and contacted her then husband, who persuaded her to return the child. Plaintiff's responsive affidavit alleged that she went to the home of the defendant to discuss the child's welfare, an argument arose in which some physical abuse was alleged to have been inflicted upon her. She then fled from the room, secreted herself in a hiding place, and after the defendant had fallen asleep awakened her son, packed his clothes and slipped from the house. She admitted her acts were wrong but pleaded anguish, concern and gnawing emotions. The defendant denied the plaintiff's allegations of any conversation or that he had struck or scratched her. The disposition of this application was not had until January 6, 1976, when the court restored the plaintiff's visitation privileges with restrictions on telephone calls, removal of the

child from the jurisdiction of the court and more than 100 miles from Lead.

The plaintiff made application to the court for a new trial which, in addition to claiming insufficiency of the evidence to support the original findings and conclusions and decree of February 28, 1975, raised the question of the error of the court in the October 24 hearing and prehearing orders and concluding that the conclusions of law and the decree in the original proceeding granted permanent custody of the minor child to the defendant and awarded the defendant all of the property. The application again raised the question of amendment of the complaint relative to the paternity of the child and the order to take the blood group tests. Finally, the application challenged the sufficiency of the evidence to sustain the October 24 order that the evidence of the change of circumstances was insufficient. After hearing on the motion the court entered an order on December 15, 1975 denying the motions. From this order denying a new trial, the October 24 order of the court regarding the custody of the minor child, the October 8 order denying amendment of the complaint and blood group tests, and from that portion of the February 28 divorce decree regarding custody of the minor child and division of the property, the plaintiff appeals. Any case involving a dispute over the custody of a child is difficult, but this one is uniquely so involving as it does the aberrations of the plaintiff, the obfuscations of counsel and the proliferation of trial judges.

■ The first issue that we turn to is the effect of the findings of fact, conclusions of law and decree of divorce entered on February 28, 1975, with respect to the child custody and property division issues. The record discloses that the matter was properly at issue on the pleadings and that due and legal notice of trial was served on the plaintiff, albeit by publication, and at the time and place of the trial the matter was properly before the trial court. In our view, the filing of the purported affidavit of default and the references in the findings and the decree to the plaintiff being in default were

improper. The default contemplated by our statutes, SDCL 15–6–55, relates to failure to plead or otherwise defend. The question of default merely goes to the right of the moving party to proceed to trial without giving notice. In the instant case the matter was at issue and due and legal notice was given, so any error arising from the filing of the affidavit and the references to default in the findings, conclusions or decree would be harmless error.

■ The matter being properly before the trial court, whether upon affidavit or notice, it is the first duty of the court to determine that the statutory residence requirements are satisfied. The second consideration is whether the statutory waiting period has expired. The court may then inquire into the existence of grounds for divorce.

SDCL 25–4–1 provides:
"Marriage is dissolved only:

\*　　\*　　\*　　\*　　\*　　\*

(2) By the judgment of a court of competent jurisdiction decreeing a divorce of the parties. \*　\*　\*"

SDCL 25–4–45 provides that:
"In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

SDCL 25–4–44 provides that:
"Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. \*　\*　\*"

Normally, of course, all of these are incorporated in one judgment or decree of divorce.

The first query then in the instant case is whether or not the provision in the divorce decree supported by the wording in the findings of fact and conclusions of law con-

stitute such a custody decree or order as would be intended to be temporary in nature and pending further evidence, or whether it is a final judgment or decree subject to amendment only upon showing of change of circumstance under the *Masek*[1] line of cases or to be "gone behind" only in the event of special circumstances as in the *Anderson*[2] line of cases, the view taken by the third trial judge.

A judgment as defined in SDCL 15–6–54(a) includes a decree and means the *final determination* of the rights of the parties in an action or proceeding (emphasis added). The statute does not make any provision for temporary as opposed to permanent decrees. While SDCL 25–4–34 provides that: " * * * During [the] waiting period the court may issue all orders required to effectuate the purposes expressed in * * * § 25–4–45 or to protect any of the parties to the action during the pendency thereof, * * * " such orders, are by their very terms and nature "meantime" orders or pendente lite and clearly discernable from the usual decree or judgment of custody.

■ We concede that the paragraph begins with the familiar "It Is Further Ordered, Adjudged and Decreed" and while we would normally be inclined to agree with the trial court's interpretation of the custody provision of the decree, it was entered under rather abnormal circumstances. The custody of the child was at issue under the pleadings and each of the parties had filed affidavits strenuously seeking temporary custody in himself and herself respectively and violently opposing temporary custody in the other. At the time of the trial both the plaintiff and the child were absent. The transcript of the divorce hearing in the record shows a dearth of information that the court usually considers in awarding custody and establishing visitation rights. We are aware that a court can take judicial notice of its own files and records; however, nowhere in the findings

or decree is there any indication that the court did so, nor did counsel make a record proposing that the court do so. In spite of the allegations in the defendant's affidavits there is no finding that the plaintiff was not a fit and proper person to have the care, custody and control of the minor child. *Both* filed application, affidavits and prepared orders at various times *after* the 28th of February, 1974, referring to "temporary" custody. These considerations plus the consideration that the phrase "and proper appearance by the plaintiff together with the minor child before this court" cannot logically be explained in any other manner leads us to hold that the trial judge, in entering the findings, conclusions and the decree, had reserved the final determination as to the custody until such time as he could conduct a full-blown hearing on the issue.

■ Our reasoning in this regard is fortified, we believe, by the similar language in the conclusions of law regarding the property division which was incorporated in the decree by reference. While it can be argued that the custody provisions of the decree are always open to amendment upon a proper showing, that argument is not true with respect to property divisions and the phrase "pending proper appearance and application before this court by the plaintiff" can only be interpreted to mean that the court obviously intended that there also be further proceeding to determine that issue.

■ This court has previously held that a final judgment on the merits is a bar to any future action between the same parties or their privies upon the same cause of action settling not only every issue actually presented to sustain or defeat the right asserted, but every issue that might have been raised in the first action.[3] A judgment which bars a second action upon the same claim extends not only to every matter offered and received so sustain or defeat

1. *Masek v. Masek* (1976) S.D., 237 N.W.2d 432.

2. *Anderson v. Anderson* (1970) 85 S.D. 152, 179 N.W.2d 1; (1972) 86 S.D. 757, 201 N.W.2d 394.

3. *Chicago and North Western Railway Company, a Corporation v. Bruce Gillis as Director of Taxation of South Dakota et al.* (1964) 80 S.D. 617, 129 N.W.2d 532, 534.

the claim or demand, but also to all other admissible matters which might have been offered to the same purpose. If however the second action is based upon a different claim or demand, the prior judgment precludes further consideration only of those issues which were actually litigated and determined.[4] Under South Dakota Law adjudication of the grounds for divorce, the determination of the rights of custody of the children and the equitable division of the property are separate and distinct issues, none of which is dependent on the other except for the necessity for the granting of a decree of divorce. SDCL 25-4-45.1 removes fault for consideration in awarding the property or child custody with certain exceptions which are not pertinent here.

■ Accordingly, we hold that the third trial judge erred in entering his order of October 8 restricting the plaintiff to the introduction of evidence of change of circumstances only and prohibiting inquiry into facts relevant to the issue of custody prior to that date. We further hold that the trial judge erred in his ruling on the issue of equitable division of the property for the same reasons.

Having determined that the provision in the divorce decree regarding the custody of the child was not intended by the court as a final determination of that issue, we next examine the right of the plaintiff to amend the pleadings to put in issue the paternity of the child and to garner evidence in support of her assertion that the defendant is not the child's father.

Having determined that the February 28th decree was not a final determination of the issue of child custody, our decision on the trial court's ruling on October 7 on plaintiff's motion for leave to amend is dictated by simple logic.

Of the three issues raised by the pleadings the only one to which the paternity alludes is the custody issue. The birth of a child *of the marriage* was not germane to the question of grounds for divorce nor for equitable division of the property, but the paternity has to be a vital issue to the custody question. What then of the February 28 Finding of Fact II: "That one child was born as issue of this marriage, namely, William Lee Adam, born November 17, 1967." It is noteworthy that the finding was incorporated in the decree as a part of the paragraph regarding custody. As to this point, are we now bound by the rule of res judicata?

■ The doctrine of res judicata is a judicially created doctrine which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility. Public policy, judicial orderliness, economy of judicial time, and the interest of litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless.[5]

This court has repeatedly said "first, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly *in issue* (emphasis supplied) in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies whether the cause of action in the two actions be identical or different."[6]

The second consideration is the one most apropo to this case and refers to a *point* which was actually and directly in issue * * * and was there judicially passed

---

4.  *Golden v. Oahe Enterprises, Inc.* (1976) S.D., 240 N.W.2d 102, 109.

5.  46 Am.Jur.2d Judgments, section 395, p. 559.

6.  *Keith v. Willers Truck Service,* 64 S.D. 274, 266 N.W. 256, 257, 104 A.L.R. 1471; *Carr v. Preslar* (1951) 73 S.D. 610, 47 N.W.2d 497, 500.

upon. The question of the child being a child of the marriage was not in issue, both parties having alleged it to be a fact in their pleadings. We can clearly distinguish this from the case where the trial court had been presented with an issue of the paternity of a child, received evidence and made its final determination and adjudication on the custody issue. In the latter case the doctrine of res judicata would clearly be applicable but not so in the former case.

Even were we unable to thus distinguish this case, we would be faced with a formidable argument why the doctrine would be inapplicable in this case.

Nature has made certain rules also. It is a fact so well known that we can take judicial notice thereof that the normal term of pregnancy is approximately nine months. There is no evidence in the record that the child was born earlier than the normal term. The date of the marriage and the date of the birth are a matter of record and just over six months intervened. This in and of itself is not conclusive against paternity because it is not uncommon for the parents to marry after conception; some of these marriages are referred to as shotgun weddings. But the plaintiff has filed herein an affidavit stating that she didn't even know the defendant at the time of the child's conception, that she met him some two months later when she was on a trip from her home in Laurens, South Carolina, to the Black Hills. These allegations stand undisputed in the record except for the assertion that the prior finding in the February 28 decree is res judicata. We do not

question the motives of the defendant in fighting so strenuously for the custody of the child if in fact he is not his. A foster parent or an adoptive parent can grow to love a child as much if not more than the natural parents, but we are faced by the law of nature that the blood ties between natural parent and child are the stronger and this has been protected both under the common law and our modern statutory provisions. The procedure for severing these ties is specific and exact. Only under extreme circumstances are they severed when the natural parents are not found to be fit.[7] No such finding regarding the plaintiff has been made in this case.

The logical conclusion then is that the judge-made rule must bow to the natural and statutory rule; that plaintiff must be allowed to amend her complaint and put the paternity into issue in order to have a full and complete adjudication on the issue of custody. The right to amend pleadings other than the absolute right granted by statute[8] before responsive pleadings are served is addressed to the sound discretion of the trial court and we have repeatedly held that the court should be liberal in exercising its discretion in granting a right to amend even after judgment where demurrers have been sustained,[9] or the judgment reversed on appeal and sent back for a new trial.[10] Unless there has been a manifest abuse of such discretion, this court will not interfere with the exercise of that discretion by the trial court.[11] The third trial judge obviously based his ruling on the motion for leave to amend on the misapprehension that the

7. "By nature and under the common law and by virtue of statutory provisions, [SDCL 25–5–7 and 30–27–23] a parent has a preferred legal right to custody of his or her own children. But under the common law and modern statutes as well, [SDCL 25–5–16 and 26–8] the state through the courts has a right under proper circumstances to terminate the parental right and deprive the parent of custody. * * There is in our opinion this helpful guide well recognized in the body of the law; the parents' right to custody over their own children should never be disturbed except upon a clear showing against the parent of 'gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child'." *Blow v. Lottman* (1953) 75 S.D. 127, 129, 59 N.W.2d 825, 826.

8. SDCL 15–6–15(a).

9. *Greely v. McCoy* (1893) 3 S.D. 624, 54 N.W. 659.

10. *Hemmer-Miller Development Co. v. Hudson Insurance Co. of N. Y.* (1934) 63 S.D. 109, 256 N.W. 798; *Raney v. Riedy* (1946) 71 S.D. 280, 23 N.W.2d 809.

11. *Raney v. Riedy*, supra.

February 28 decree was dispositive of the custody question. Since we have held that he was in error in that regard, we hold that he was likewise in error with respect to the motion for leave to amend.

The plaintiff's motion for an order to have blood group testings under SDCL 15–6–35(a) is likewise addressed to the discretion of the trial court. Again we feel that the court's decision in its October 8 order denying the motion was based on the same misapprehension as the portion of the order denying the right to amend. While such blood group tests can never establish paternity, nevertheless, according to the rule of heredity, nonpaternity can be established whenever the blood group of a child is incompatible with that of the alleged father.[12] Since the purpose for the tests in this case is to determine nonpaternity as opposed to paternity it would appear that in all likelihood the results could be helpful in ascertaining the truth and in all likelihood upon remand the trial court would look with favor upon a renewal of the motion.[13]

DUNN, C. J., and ZASTROW, J., concur.

WOLLMAN, J., and HERTZ, Circuit Judge, dissent.

HERTZ, Circuit Judge, sitting for PORTER, J., disqualified.

WOLLMAN, Justice (dissenting).

I would affirm.

In her complaint for divorce, plaintiff alleged that one child had been born to her marriage with defendant. Defendant made the same allegation in his counterclaim for divorce. Nowhere in the several affidavits filed by plaintiff is there any contention that she was not aware of the allegation that she had made in her complaint or that defendant had made in his counterclaim with respect to the birth of the child.

Plaintiff does not contend that she was unaware of the child's paternity at the time the divorce action was commenced. Thus the situation that existed in *Anderson v. Anderson*, 85 S.D. 152, 179 N.W.2d 1; on remand, 86 S.D. 757, 201 N.W.2d 394, is not present here.

Plaintiff testified that she learned in March of 1975 that a decree of divorce had been granted. If ever there was a time that she should have taken steps to have that decree set aside or modified, it was then. Instead of taking any such action, however, plaintiff relied upon the decree by marrying, in August of 1975, the man with whom she had been living for a number of months. This action on her part obviates the necessity of a discussion of the principles of res judicata on our part, for having accepted its benefits, plaintiff will not be heard to assert the nullity and invalidity of the judgment. *Brockel v. Brockel*, 80 S.D. 547, 128 N.W.2d 558.

The evidence concerning the alleged change of circumstances subsequent to the entry of the February 28, 1975 decree of divorce was such that the trial court was not in error in holding that the award of custody should not be modified. *Masek v. Masek*, S.D., 237 N.W.2d 432.

I am authorized to state that Circuit Judge HERTZ joins in this dissent.

---

12. From Here to Paternity: "Blood-grouping Tests" in Bastardy and Divorce Proceedings, 3 SD L.Rev. 125 (Spring–1958); *State ex rel Wollock v. Brigham* (1948) 72 S.D. 278, 33 N.W.2d 285.

13. *State v. Damm* (1936) 64 S.D. 309, 266 N.W. 667.